PREFERRED MUTUAL INSURANCE COMPANY, APPELLANT, *v.*
THOMPSON ET AL., APPELLEES.

[Cite as Preferred Mut. Ins. Co. *v.* Thompson (1986), 23 Ohio St. 3d 78.]

(No. 85-122—Decided April 11, 1986.)

*Baran & Baran Co., L.P.A.,* and *John Tarkowsky,* for appellant.
*Inscore, Rinehardt, Whitney, Enderle & DeWeese* and *John R. Enderle,* for appellee Albert E. Sabo.

SWEENEY, J. An insurance company has a duty to defend an action against its insured when the allegations of the complaint against the insured bring the action within the coverage of the insured's policy. *Motorists Mut.* v. *Trainor* (1973), 33 Ohio St. 2d 41, paragraph two of the syllabus. See, also, *Willoughby Hills* v. *Cincinnati Ins. Co.* (1984), 9 Ohio St. 3d 177. In the instant case, the allegations of negligence set forth in Victor Thompson's complaint against Albert Sabo bring the action within the coverage of Sabo's homeowners policy; and, the presence of additional allegations, which state an intentional tort claim, does not automatically remove Thompson's action from the coverage of that policy. When a complaint against an insured states both negligence and intentional tort claims that are based upon the same occurrence, the insurance company that is contractually obligated to defend the insured in negligence actions is required to make a defense as to both claims against the insured, regardless of the ultimate outcome of the action or the insurance company's ultimate liability to the insured. See *State Farm Fire & Cas. Co.* v. *Pildner* (1974), 40 Ohio St. 2d 101 [69 O.O.2d 509] (insurer must provide defense in a civil action that is based upon the same occurrence that formed the basis for the insured's criminal conviction on charge of "shooting with intent to wound"); *Motorists Mut.* v. *Trainor, supra;* and *Willoughby Hills* v. *Cincinnati Ins. Co., supra,* at 180-181.

In spite of the foregoing, the appellant (Preferred) contends that, because Sabo's pretrial admissions and the facts developed before the trial court clearly reveal that Sabo intentionally injured Thompson and that the underlying dispute between Sabo and Thompson arose out of a landlord-tenant relationship, Sabo's homeowners policy exclusions for "expected or intended" injuries and injuries "arising out of business pursuits" remove any obligation that Preferred might otherwise owe to Sabo.

With regard to Preferred's assertion that Thompson's injuries arose out of Sabo's business pursuit, we note that the trial court, as trier of fact, determined that "Sabo's act in defending himself constituted conduct ordinarily incident to a non-business pursuit," which conduct is expressly excepted from the business-pursuit exclusion. While Sabo originally became embroiled in a dispute with Thompson as a result of his business activity (*i.e.,* as a landlord), the evidence in the record also shows that (1) Thompson was throwing rocks at Sabo's own *residence,* (2) Sabo was standing just outside the doorway of his *residence* when he was "grabbed" by

Thompson, and (3) Sabo was attempting to prevent *personal injury* to himself when he shot Thompson. In light of the foregoing, the evidence clearly supports the trial court's conclusion that Thompson's injuries, having arisen out of activities "ordinarily incident to a non-business pursuit," are not excluded from the coverage of Sabo's homeowners policy.

We next address Preferred's assertion that, by shooting Thompson, Sabo caused an injury that was "expected or intended" and therefore excluded from the coverage of his homeowners policy. Sabo's undisputed testimony reveals that he did, in fact, intend to shoot Thompson, but a question remains as to whether this intentional act properly falls within the "expected or intended" injury exclusion to Sabo's policy of insurance. Preferred accepts the trial court's conclusion that the shooting was "possibly in self-defense," but it contends that no distinction may be drawn under the "expected or intended" injury exclusion between injuries caused by persons acting wrongfully and those acting under a claim of right (*e.g.,* in self-defense). While a facial analysis of the exclusion in question may support Preferred's contention, we find that neither the purpose behind the exclusion nor public policy is served by application of the exclusion to an insured who claims to have acted in self-defense.

Generally, an individual may not purchase liability insurance coverage against a claim arising from his intentional infliction of injury upon the person or property of another. *Commonwealth Cas. Co.* v. *Headers* (1928), 118 Ohio St. 429; *cf. Kish* v. *Central Natl. Ins. Group* (1981), 67 Ohio St. 2d 41 [21 O.O.3d 26]. Allowing the purchase of such coverage would remove an important disincentive to the commission of intentional torts — the resultant threat, through civil damage claims, to the tortfeasor's personal assets. No purpose is served, however, by denying coverage to an insured who, while acting in self-defense, intentionally injures another. The insured who acts in self-defense does so only as a *reaction* to his attacker, and any injuries suffered by the attacker are not the result of the insured's misconduct.

From the standpoint of an insurance company, an "expected or intended injury" exclusion prevents individuals from purchasing insurance as a shield for their *anticipated intentional misconduct.* Without such an exclusion, an insurance company's risk would be incalculable. An act of self-defense, however, is neither anticipated nor wrongful from the standpoint of the insured. The risk that an insurance company bears in providing an intentional tort defense for an insured who claims to have acted in self-defense is calculable and, from a monetary standpoint, minimal.[2]

The terms of Sabo's personal liability coverage under his homeowners

---

[2] An insurance company incurs only the cost of its defense because, if the insured's defense fails (*i.e.,* if he did not act in self-defense but did, in fact, commit an intentional tort), the "expected or intended" injury exclusion *properly* will preclude indemnification for any verdict rendered against the insured as a result of his intentionally tortious conduct.

policy with Preferred Mutual Insurance Company require Preferred "to defend any suit against the [i]nsured seeking damages on account of * * * [a covered] bodily injury." (Section II, Coverage E.) Thompson's allegations that his injuries were caused by Sabo's negligence state a claim for damages based upon a "bodily injury" that is covered under Sabo's policy; and, Sabo's admission that he intentionally shot Thompson does not remove Thompson's injuries from the coverage of the policy. When an insured admits that he intentionally injured a third party and the surrounding circumstances indicate that he acted in self-defense in causing the injury, the insured's insurance company may not refuse to defend the insured from the third party's intentional tort claim on the grounds that the third party's injuries fall within an exclusion from coverage for "bodily injury * * * which is either expected or intended from the standpoint of the [i]nsured."[3]

Based on the foregoing, we hold that Preferred must provide a defense for Sabo against the claims of Thompson in the matter of *Thompson* v. *Sabo* (Richland County Court of Common Pleas, No. 83-102-H). Preferred may conduct this defense "in good faith without waiving its right to assert at a later time the policy defenses it believes it has, provided that it gives its insured notice of any reservation of rights." *Motorists Mut.* v. *Trainor, supra,* at paragraph one of the syllabus.[4]

*Judgment affirmed.*

CELEBREZZE, C.J., LOCHER, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

WRIGHT, J., concurs in the syllabus and judgment only.

---

[3] Courts of other jurisdictions have addressed the application of "intentional injury" exclusions to insureds who claim to have acted in self-defense and have reached a similar conclusion. See, *e.g., Transamerica Ins. Group* v. *Meere* (1984), 143 Ariz. 351, 694 P. 2d 181; *Allstate Ins. Co.* v. *Novak* (1981), 210 Neb. 184, 313 N.W. 2d 636; *Gray* v. *Zurich Ins. Co.* (1966), 65 Cal. 2d 263, 54 Cal. Rptr. 104, 419 P. 2d 168.

[4] We note that some confusion exists between the trial court's Findings of Fact and Conclusions of Law and its Judgment Entry. Although the court concluded that Sabo's action was "possibly in self-defense" and that a determination of whether Sabo's actions constituted an intentional tort should be made in the matter of *Thompson* v. *Sabo, supra,* the court's Judgment Entry states that "[Preferred] Mutual Insurance Company shall provide a defense for Albert Sabo * * * and shall pay *any* judgment rendered by a jury against Mr. Sabo." (Emphasis added.) We wish to make clear that Preferred will be required to pay a judgment rendered against Sabo only if the judgment is based solely upon Thompson's negligence claim, the merits of which were not addressed at any stage in the instant case. If a finding is made in *Thompson* v. *Sabo* that Sabo did not act in self-defense, but committed an intentional tort against Thompson, Preferred will be relieved of its obligation to pay any judgment on Sabo's behalf. See footnote 2, *supra.*

CELEBREZZE, C.J., concurring. I concur in the well-reasoned majority opinion authored by Justice Sweeney. Today's decision is an affirmation of the longstanding rule that where a complaint in a civil action against an insured alleges both a negligent injury within the scope of coverage of the insurer's policy and that the injury was caused intentionally, the insurer is required to defend regardless of the outcome of the litigation or the liability of the insurer to the insured under the terms of the policy.

On remand for trial, the parties in this appeal should, in my opinion, also consider the following observation contained in Chief Justice O'Neill's concurrence in *State Farm Fire & Cas. Co.* v. *Pildner* (1974), 40 Ohio St. 2d 101, 106 [69 O.O.2d 509]:

"* * * [I]n the present case the insurer alleges that the insured intentionally caused the injuries which are the basis of the damage suit, and that, therefore, his actions are outside the scope of the insurance policy. In such case, although the company has a duty to defend the insured, there is an undeniable conflict between the insurance company and the insured. The insured, if he cannot totally escape liability, will desire to show that his liability is based on negligent conduct which is covered by his insurance policy. The insurance company will, on the other hand, desire to prove that the insured's actions were intentional and hence not within the scope of the policy. Under these facts, I believe that D.R. 5-105, which is mandatory, dictates that the insurance company not be allowed to select counsel to defend the insured. The adversity between the insurance company and the insured, coupled with the pressure which the insurance company could exert on counsel selected by it, simply presents too great a possibility that that counsel's loyalty to the insured will be diluted."