**STATE FARM FIRE & CASUALTY COMPANY, Plaintiff,**

v.

**Ronald W. HIERMER, et al., Defendants.**

No. C2–87–350.

United States District Court, S.D. Ohio, E.D.

Oct. 26, 1988.

Affirmed, 884 F.2d 580.

Brian Bradigan, Hamilton, Kramer, Myers & Cheek, Columbus, Ohio, for plaintiff.

James S. Mowery, Jr., Worthington, Ohio, and James K. Reuss, Columbus, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

GRAHAM, District Judge.

This matter is before the Court on the cross-motions for summary judgment of all the parties: plaintiff, State Farm Fire & Casualty Company ("State Farm"), a corporation with its principal place of business in Illinois; defendant Ronald W. Hiermer and defendant Cincinnati Insurance Company ("CIC") who are both citizens of Ohio. The parties seek declaratory judgment pursuant to 28 U.S.C. § 2201 with respect to whether or not State Farm or CIC have any duty to defend and to indemnify Mr. Hiermer under their policies.

### I. *Jurisdiction and Declaratory Relief*

■ Plaintiff has asserted subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201 and 1441. The former provision provides for declaratory relief by a district court "in a case of actual controversy within its jurisdiction." Section 1441, the removal statute, does not apply to this case which was originally filed in this Court. Neither statute would confer subject matter jurisdiction. Fed.R.Civ.P. 12(h) provides for dismissal of any action at any time whenever "it ... appears that the court lacks subject matter jurisdiction." However, the complaint alleges the facts necessary to establish diversity jurisdiction under 28 U.S.C. § 1332.

■ Even though a district court may have diversity jurisdiction, it is discretionary whether or not to grant relief pursuant to the declaratory relief statute, 28 U.S.C. § 2201. *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). Several factors must be considered: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment would serve a useful purpose in clarifying the relations at issue; (3) whether an action for declaratory relief is being used merely for "procedural fencing" or "to provide an arena for a race for *res judicata*"; (4) whether declaratory relief would increase friction between the federal and state courts or improperly encroach on state jurisdiction; (5) whether there is a more effective alternative. *Grand Trunk Western Railroad v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984). Declaratory relief has been held appropriate in construing insurance contract provisions:

A declaratory judgment proceeding which involves only the extent of the coverage of an insurance policy and not the liability of the insured to the persons injured in the accident, will be entertained in the Federal Court, and the insurer is entitled to have the extent of the coverage of its policy declared in such a proceeding,—other essentials of jurisdiction being present.

*American States Insurance Co. v. D'Atri,* 375 F.2d 761, 763 (6th Cir.1967) (quoting, *Maryland Casualty Co. v. Faulkner,* 126 F.2d 175, 178 (6th Cir.1942)); *accord State Farm Fire and Casualty Co. v. Odom,* 799 F.2d 247 (6th Cir.1986).

The factors set forth in *Grand Trunk* do not preclude the granting of declaratory relief in this case. The insurance contracts at issue will be construed under Ohio law. The Sixth Circuit has held:

The general rule in diversity cases is that a federal court must apply the law as expressed by the highest court of the state. *Clutter v. Johns–Manville Sales Corp.*, 646 F.2d 1151 (6th Cir.1981); *Ruth v. Bituminous Casualty Corp.*, 427 F.2d 290 (6th Cir.1970). If the highest court of the state has not spoken, however, then the federal court ascertains what the state law is and applies it. *See West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *Clutter, supra* at 1153.

*McPherson v. Cleveland Punch and Shear Co.*, 816 F.2d 249, 251 (6th Cir.1987) (quoting, *Coleman v. Western Electric Co.*, 671 F.2d 980 (6th Cir.1982)).

## II. *Facts*

On August 14, 1986, John D. Penn filed suit against Rockwell International Corporation and Ronald W. Hiermer, Penn's supervisor at Rockwell, in the United States District Court, Southern District of Ohio, Eastern Division, Case Number C–2–86–0992. That case is pending before The Honorable John D. Holschuh. In that action, Penn alleges that defendant Hiermer violated 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Ohio common law by engaging in racial discrimination, retaliation, slander, and intentional and negligent infliction of emotional distress. At the time of the actions alleged by Penn, defendant Hiermer was covered by State Farm Homeowners Policy, Number 35–043537–0, Form FP7185.1. That policy generally insured against personal liability of the insured for bodily injury and for property damage with a limit of liability of $300,000. Defendant Hiermer was also covered by CIC's personal umbrella liability policy, Number CCC 289 00 11 which provides liability coverage up to one million dollars.

Neither insurance company disputes that the policies were in effect. However, both companies insist that the terms of their policies as interpreted under Ohio law do not provide coverage to Mr. Hiermer.

## III. *The Standard for Summary Judgment*

Fed.R.Civ.P. 56(c) provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in a light favorable to the party opposing the summary judgment and that party must be given the benefit of all reasonable inferences. *Potters Medical Center v. City Hospital Association*, 800 F.2d 568 (6th Cir. 1986). However, the movant need not present evidence to negate every aspect of the non-movant's claim, it need only support its own claim that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## IV. *Discussion and Law*

In his suit, Penn claims violations of 42 U.S.C. § 1981 and Title VII alleging that defendant Hiermer intentionally discriminated and retaliated against him. The only claims that could be based upon negligence are the claims of emotional distress and slander.

An insurer that is obligated to provide a defense to a negligence claim is also required to make a defense of the intentional tort claims, "regardless of the ultimate outcome of the action or the insurance company's ultimate liability to the insured." *Preferred Mutual Insurance Co. v. Thompson*, 23 Ohio St.3d 78, 80, 491 N.E.2d 688, 690 (1986). However, an insurer may conduct a defense "in good faith without waiving its right to assert at a later time the policy defenses it believes it has, provided that it gives its insured notice of any reservation of rights." *Id.* at 82, 491 N.E.2d at 691 (quoting *Motorists Mutual Insurance Co. v. Trainor*, 33 Ohio St.2d 41, 294 N.E.2d 874 (1973)). The insurers in the case at bar have followed this procedure and they have provided a de-

fense in the *Penn* lawsuit pending a ruling by this Court in this action.

The facts in the record establish that all actions of which Penn complains occurred on the premises of Rockwell. Furthermore, all encounters between Penn and Hiermer occurred in Penn's role as employee and Hiermer's role as supervisor. In Penn's EEOC charge he states that "All instances of Ronalds [sic] Hiermer's assaulting and battering me and his verbal abuse of me took place while I was performing my job duties on the premises of Rockwell International Corporation, and the managerial superiors of Ronald Hiermer had knowledge of these instances." *See also* the Hiermer affidavit (Doc. No. 34).

Both State Farm and CIC assert that their insurance policies do not cover the sort of actions alleged in Penn's complaint against Hiermer. Consequently, both State Farm and CIC argue that they do not have a duty to defend or to indemnify defendant Hiermer.

█ Under Ohio law, the burden is on the insured to prove that he is entitled to coverage by showing facts sufficient to establish that his loss was within the description of the policy. *Sterling Merchandise Co. v. Hartford Insurance Co.*, 30 Ohio App.3d 131, 506 N.E.2d 1192 (Summit Cty.1986). The burden is on the insurer to prove that a particular insurance policy exclusion applies. *Gibbons v. Metropolitan Life Insurance Co.*, 135 Ohio St. 481, 21 N.E.2d 588 (1939). In construing the language in an insurance policy exclusion, clear and unambiguous language is to be understood in its ordinary, usual or popular sense. *Randolf v. Grange Mutual Casualty Co.*, 57 Ohio St.2d 25, 385 N.E.2d 1305 (1979). Courts may not rewrite, through rules of construction, the unambiguous terms of an insurance contract. *Gomolka v. State Automobile Mutual Insurance Co.*, 70 Ohio St.2d 166, 168, 436 N.E.2d 1347, 1349 (1982). However, if the language of a policy is unclear or ambiguous, it should be strictly construed against the insurance company that drafted the contract. *American Financial Corp. v. Fireman's Fund Insurance Co.*, 15 Ohio St.2d 171, 239 N.E.2d 33 (1968); *Ohio Farmers Insurance Co. v. Wright*, 17 Ohio St.2d 73,

246 N.E.2d 552 (1969). Finally, courts must examine insurance contracts in their entirety to determine if there are any applicable exceptions to their coverage. *Zanco, Inc. v. Michigan Mutual Insurance Co.*, 11 Ohio St.3d 114, 115, 464 N.E.2d 513, 515 (1984).

### A. The State Farm Policy

█ The State Farm policy does not promise to defend false or fraudulent claims. Therefore, State Farm may show that there is no coverage based on the actual facts, regardless of the allegations of the complaint. "In [a declaratory action], the insurer may proceed to demonstrate that the facts alleged in the underlying tort complaint differ from the actual facts ascertained by the insurer, and that the actual facts remove the insured's contract from coverage." *Preferred Risk Insurance Co. v. Gill*, 30 Ohio St.3d 108, 115, 507 N.E.2d 1118, 1122 (1987).

The State Farm policy covers claims for bodily injury and property damage. "Bodily injury" is defined as "bodily harm, sickness or disease." This is to be contrasted with CIC's policy which covers "Personal Injury" defined so as to include, *inter alia*, "slander," "humiliation" and "mental anguish." State Farm defines "property damage" as "physical damage to or destruction of tangible property, ..." Hiermer contends that Penn's suit is covered by the State Farm policy. In order to prevail in this claim, Hiermer must show that the *Penn* suit falls within the coverage of the State Farm policy. If he can not do this, there is no need to examine any of the exclusions of that policy.

█ Penn's claims of racial discrimination, slander and intentional and negligent infliction of emotion distress do not fit within State Farm's definitions of bodily injury or property damage and are not covered.

Penn's claim of racial discrimination and retaliation in the context of his employment allegedly resulted in economic injury which might by liberal construction be viewed as a form of property damage. However, the only property damage covered by State

Farm is damage to tangible property. Penn's employment rights are not tangible property. By the same reasoning, Penn's claim of slander is not a claim for property damage. Penn's claims of intentional and negligent infliction of emotional distress are claims of a type of personal injury. However, they are not claims of bodily injury as that term is defined in the State Farm policy. Even though there were incidents of physical contact, Penn admitted that he suffered no physical injury from Hiermer. (Penn's August 18, 1987 Depo. at p. 143).

 State Farm's policy specifically excludes bodily injury or property damage which is expected or intended by an insured. Racial discrimination and retaliation which violate Title VII and 42 U.S.C. § 1981 are intentional. Intentional infliction of emotional distress is by definition intentional. Therefore, both of these claims fall under the exclusion.

State Farm's policy also contains a "business pursuits" exclusion. The pertinent section of the policy states:

Section II—Exclusions

1. Coverage L and Coverage M do not apply to:

b. Bodily injury or property damage arising out of business pursuits of an insured or the rental or holding for rental of any part of any premises by an insured. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-business pursuits;

Under the definitions section of the insurance policy, "business" means a trade, profession or occupation. The business pursuit exclusion is a common one in homeowners liability policies.

 Defendant Hiermer's occupation was that of a supervisor at Rockwell, and his position satisfies the requirement of continuity and profit motive which most courts have held necessary in order to satisfy the definition of a business pursuit. *Asbury v. Indiana Union Mutual Insurance Co.*, 441 N.E.2d 232, 237 (Ind.App. 1982). *See also Dewey v. Niagara Fire Insurance Co.*, 16 Ohio Misc. 297, 242 N.E.2d 692 (1968); Annotation, 48 A.L.R.3d 1096 (1973).

However, the State Farm policy contains an exception to the business pursuit exclusion for "activities which are ordinarily incident to non-business pursuits." The only published Ohio case to address the exact language of the business pursuits exclusion at issue is *Preferred Mutual Insurance Co. v. Thompson*, 23 Ohio St.3d 78, 491 N.E.2d 688 (1986). In *Thompson*, a dispute arose between Albert Sabo, the owner/landlord of a trailer park and Victor Thompson who was angry because Sabo planned to evict Thompson's friend from the trailer park. Thompson threw stones at Sabo's mobile home and in an ensuing altercation Sabo intentionally shot Thompson in self defense. The Supreme Court affirmed the trial court's determination that the dispute originally arose out of a business pursuit but held that the insured was covered because "Sabo's act in defending himself constituted conduct ordinarily incident to a non-business pursuit." *Thompson*, 491 N.E.2d at 689. The court emphasized that Sabo was in his own home, defending himself.

In this case the alleged activity which might qualify as an "activity ordinarily incident to non-business pursuits" would be the incident of December 23, 1985 when "nobody was doing no work that day." (Penn depo. of November 18, 1986 at 101). Penn stated that on this occasion Hiermer grabbed his collar and said, "Merry Christmas, you black bastard." (Penn depo. at 36). This incident is the basis of Penn's claim for slander and apparently also the claims of intentional or negligent infliction of emotional distress. (Penn complaint at paragraph 13). In his deposition, Supervisor George Greer, who was with Penn that day, confirms the language used by Hiermer, but stated that "that was the end of it and they shook hands" and that "they were kidding." (Greer depo. at 18).

While the incident of December 23, 1985 viewed in isolation might be construed as a prank or an "activity ordinarily incident to non-business pursuits," viewed in the context of the underlying facts, it was only

one incident in a whole course of conduct which was part of the business relationship between Hiermer and Penn. Therefore, the December 23 incident does not fall within the exception to the business pursuits exclusion.

State Farm is not required to provide a defense for Hiermer in the underlying lawsuit. Penn's claims against Hiermer do not fall within the coverage of State Farm's policy because they are not claims for property damage or bodily injury. Even if they were covered, the claims for racial discrimination, retaliation and intentional infliction of emotional distress would be excluded by the provision which excludes coverage for injury or damage expected or intended by the insured. Finally, all of Penn's claims would be excluded from coverage by the business pursuits exclusion.

### B. The Cincinnati Insurance Company Policy

The parties agree that defendant Hiermer is covered under a personal umbrella liability endorsement which is attached to a contractor's umbrella liability policy which was issued to Martin Painting and Coating Company, Martin Construction Company, a division, and Timothy J. and Jean Ann Martin. CIC alleges: (1) that defendant Hiermer is not a covered person under the terms of the policy because Penn's injuries in the underlying action are not the result of "an accident" as defined in the policy; (2) that the "intentional injury" exclusion precludes coverage; (3) that the exclusion for "personal injury ... arising out of business" precludes coverage; and (4) that the "industrial collateral benefits" exclusion precludes coverage.

Pertinent terms are defined in CIC's policy as follows:

Part I—Definitions

1. Personal Injury means:

A. bodily harm, sickness or disease (including required care, loss of services and death) to others caused by an accident

B. libel, slander, defamation of character, false arrest, willful or false detention or imprisonment, wrongful eviction or entry, malicious prosecution, humiliation, or invasion of privacy and, if arising out of any of these, mental anguish, mental injury or shock;

. . . . .

3. Accident means an event or series of related events that unexpectedly, unintentionally and suddenly causes personal injury ...

4. Business includes a trade, occupation or profession (other than farming).

. . . . .

6. Basic policy or policies means a policy or policies listed on the declarations (including renewals or replacements) which provides liability coverage for Personal Injury or Property Damage because of accidents.

The CIC policy in "Part III—What We Will Do" states:

We will pay on behalf of anyone covered by this endorsement:

1. Excess insurance coverage over and above the amounts provided for in basic policies, or

2. Damages arising out of claims or legal actions anywhere in the world covered by this endorsement which are either excluded or not covered under your basic policies.

. . . . .

3. If you or a relative are not covered by any of the basic policies and are covered by this endorsement, we will defend them, in court if necessary, against legal actions or claims seeking payment from anyone covered by this endorsement because of personal injury or property damage. We will do this even if there are no grounds for the action or claim. We will pay the cost of this defense in addition to the limit of coverage.

. . . . .

Part IV—What Is Not Covered—Exclusions provides:

1. We will not cover personal injury or property damage arising out of business or business property unless covered under one or more of the basic policies.

. . . . .

5. We will not cover any obligation you or anyone else has to provide benefits to employees under a Worker's Compensation, occupational disease, unemployment compensation or disability benefits law.

. . . . .

8. We will not cover Personal Injury or Property Damage caused intentionally.

CIC promises to defend "even if there are no grounds for the action or claim."

Where the insurer represents to its insured that it will undertake the defense of any claim asserting injury within coverage, even where the claim is false or fraudulent, the duty to defend may arise solely from the allegations of the underlying complaint, regardless of the true facts as they are known to the insurer. *Preferred Risk Insurance Co. v. Gill*, 30 Ohio St.3d 108, 114, 507 N.E.2d 1118, 1124 (1987).

▮ An insurer in the position of CIC has a duty to defend an insured even if: "[The] duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage or there is some doubt as to whether the theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." *Willoughby Hills v. Cincinnati Insurance Co.*, 9 Ohio St.3d 177, 459 N.E.2d 555, 558 (1984). However, this broad duty to defend does not exist if the complaint contains no allegation or claim that is potentially or arguably within the policy coverage. *VIP Development, Inc. v. Cincinnati Insurance Co.*, 32 Ohio St.3d 337, 513 N.E.2d 730 (1987).

▮ CIC covers "damages arising out of claims or legal actions anywhere in the world covered by this endorsement which are either excluded or not covered under your basic policies." (CIC, Pt. III, 2). The State Farm policy is a basic policy. The declarations page for the personal umbrella liability endorsement for Virginia and Ronald Hiermer states at line 6:

It is agreed by you and your relatives that the following basic policies are in force as of the inception date of this policy:

This is followed by a statement of the limits of coverage and type of underlying insurance that is required. Listing only the limits of coverage required reasonably suggests that CIC did not care where the Hiermers found their basic policy or with which company but rather that the underlying basic policy have sufficiently high limits of coverage. The State Farm policy provided such limits and would fit the definition of basic policy. Furthermore, the Court notes that CIC concedes that the State Farm policy is a basic policy. CIC has stated, "It is patently clear that CIC's personal umbrella liability endorsement was written specifically as an excess insurance policy over the limits of liability in State Farm's policy." (CIC's Reply Memorandum to State Farm's Motion for Summary Judgment at p. 4).

▮ The Court has determined that the State Farm policy does not cover Penn's lawsuit. This determination satisfies the threshold requirement for coverage under CIC's endorsement. The question then becomes: Is Penn's lawsuit as alleged in his complaint covered by the CIC endorsement?

Penn has alleged slander and a claim of humiliation can be inferred from the facts alleged in this complaint. It is reasonable to interpret his complaint as alleging that both resulted in negligent infliction of emotional distress. Thus, the allegations in Penn's underlying complaint clearly invoke definition B. under Personal Injury which covers "libel, slander, defamation of character, ... humiliation, or invasion of privacy and, if arising out of any of these, mental anguish, mental injury or shock." Unlike Personal Injury Definition A, Definition B does not require an "accident." Since Penn alleges slander which under Ohio law can result from negligence and he also alleges negligent infliction of emotional distress, CIC's exclusion for personal injury intentionally caused does not apply. Therefore, Penn's claims of slander, humiliation and negligent infliction of emotional distress are covered unless other exclusions apply.

█ CIC argues that it is exempted from defending or indemnifying Hiermer because of the exclusion of its policy which states, "We will not cover any obligation you or anyone else has to provide benefits to employees under a worker's compensation, occupational disease, unemployment compensation or disability benefits law." There is no evidence in the record that any of Penn's claims herein are covered under any worker's compensation law. The Court further notes that an almost identically worded exclusion has been held to be ambiguous by an Ohio appellate court in *State Automobile Mutual Insurance Co. v. Teramona III*, Slip Op. (Seventh Appellate District, Jefferson Cty., December 22, 1987). Accordingly, CIC may not rely on this policy exclusion to deny a defense to defendant Hiermer.

CIC will not cover "personal injury ... arising out of business ... unless covered under one or more of the basic policies." (CIC policy, PT IV, 1). The Court concluded that the State Farm policy, the basic policy, did not provide coverage because of its business pursuits exclusion.

It is significant to note that CIC's business pursuits exclusion, unlike State Farm's, does not contain an exception for "activities ordinarily incident to non-business pursuits." The CIC policy defines business as including "a trade, occupation or profession (other than farming)." The allegations in Penn's complaint leave no doubt that all the actions complained of occurred in the course of Hiermer's employment as Penn's supervisor and that all the claims asserted against Hiermer arise directly out of his occupation. However, Hiermer claims that the incident of December 23, 1985 was not part of a business pursuit but was a prank or horseplay which, while it occurred on the employer's premises, occurred at a time when no work was being done because of the Christmas holiday and Hiermer has presented evidence to that effect. As noted earlier, the incident of December 23, 1985 when viewed in context, was only one of a series of alleged incidents of alleged racial harassment arising out of the employment relationship of Hiermer and Penn and the

Court concludes that reasonable minds could only conclude that this incident is part of plaintiff's claims of racial discrimination, retaliation and harassment in his employment.

The Sixth Circuit recently affirmed the granting of summary judgment and quoted with approval the Supreme Court's decision in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986):

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Boddy v. Dean*, 821 F.2d 346, 349 (6th Cir.1987).

█ Penn's claims arise out of "business" as defined in the CIC policy. Under the standard of *Preferred Risk Insurance Co. v. Gill*, 30 Ohio St.3d 108, 507 N.E.2d 1118 (1987) and *Willoughby Hills v. Cincinnati Insurance Co.*, 9 Ohio St.3d 177, 459 N.E.2d 555 (1984), CIC's business pursuits exclusion applies and CIC therefore has no duty to defend or indemnify Hiermer in the underlying lawsuit.

### V. Conclusion

The motions for summary judgment of plaintiff State Farm Fire & Casualty Company and defendant Cincinnati Insurance Company are GRANTED; the motion for summary judgment of defendant Ronald W. Hiermer is DENIED.

Pursuant to 28 U.S.C. § 2201, the Court hereby renders a declaratory judgment that neither plaintiff State Farm nor defendant Cincinnati Insurance Company have any duty to defend or indemnify defendant Hiermer for the claims asserted in the case of *Penn v. Rockwell*, Case No. C-2-86-992, Southern District of Ohio, Eastern Division.

It is so ORDERED.