# CIRCUIT COURT OF THE CITY OF RICHMOND

Rose West

v.

Harleysville
Mutual Ins. Co.

June 24, 1998

Case No. LC-1814-3

BY JUDGE T. J. MARKOW

This case is before the court on the defendant's Motion for Summary Judgment. The plaintiff is Rose West, previously a defendant in a suit styled *Raul G. Cantu v. C. I. Assocs., L.P., et al.*, No. 96cv0990 (E.D. Va. 1996). The defendant here is Harleysville Mutual Insurance Co. (the Insurer), West's homeowner's insurance provider. Returning to the allegations of the underlying suit, West was the general manager of the hotel at which Cantu was employed. The amended complaint contained seven separate counts: (I) Title VII sexual discrimination, harassment, and retaliation; (II) unlawful discharge; (III) sexual assault and battery; (IV) intentional infliction of emotional distress; (V) negligent infliction of emotional distress; (VI) defamation; and (VII) breach of duty. In general, Cantu alleged that his social and business relationship with West was permeated by her abusive and injurious behavior towards him.

On or about December 31, 1996, the defendants in the *Cantu* case settled his claims. The hotel management company agreed to pay $60,000.00 to settle Cantu's claims, as well as $10,000.00 in legal fees incurred by all of the defendants. West and the hotel management company then entered into an oral agreement whereby West agreed to repay the full amount of the settlement, plus one-half of the legal fees incurred in the *Cantu* case. On January 2, 1997, West's counsel forwarded a copy of the amended *Cantu* complaint to her

insurer and again inquired whether it intended to defend the suit.[1] No mention was made of the settlement agreement reached three days earlier. Harleysville advised West's counsel on January 8, 1997, that the Policy did not afford coverage for the claims pending against her and refused to provide any defense. Here, West is suing the insurer for the cost of settlement and/or the defense costs incurred in the *Cantu* case.

A motion for summary judgment may be sustained only where no material facts are genuinely in dispute. Sup. Ct. of Va. R. 3:18. Summary judgment is appropriate in those cases where the only dispute concerns a pure question of law. *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 5 (1954).

The parties have stipulated that the following Policy provisions are relevant to this dispute:

COVERAGE E — PERSONAL LIABILITY
If a claim is made or suit is brought against an insured for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:
1. pay up to our limit of liability for the damages for which the *insured* is legally liable; and
2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent ... .

The following situations are excluded from coverage:

1. *Coverage E — Personal Liability* ... [does] not apply to *bodily injury* or *property damage*:
a. which is expected or intended by the *insured* [("Expected or Intended Acts" Exclusion)];
b. (1) arising out of or in connection with a *business* engaged in by an *insured*. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the *business* [("Business Pursuits" Exclusion)];

---

[1] Paragraph 3 of the Motion for Judgment states that the insurer was previously "provided timely notice of a claim implicating coverage under the policy and provided a copy of the [first, unamended] complaint ... ." No mention is made of whether Harleysville had already declined to defend or cover based on the first *Cantu* complaint. The court assumes that it had.

2. *Coverage E — Personal Liability* does not apply to:
    a. liability ... .
        (2) under any contract or agreement. [("Liability Under Contract or Agreement" Exclusion)].

The following definitions govern the Policy:

1. *"bodily injury"* means bodily harm, sickness, or disease, including required care, loss of services, and death that results;

2. *"business"* includes trade, profession, or occupation ... .

5. *"occurrence"* means an accident, including the continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
    a. *bodily injury*; or
    b. *property damage.*

The defendant, Harleysville Mutual Insurance Co., contends that it has no duty to defend or indemnify West since there is no coverage afforded under the Policy for the claims asserted by Cantu. In particular, the Insurer argues that there has been no "occurrence" as defined by the policy because the alleged acts were intentional rather than unexpected. *See Utica Mut. Ins. Co. v. Travelers Indemn. Co.*, 223 Va. 145, 147-48 (1982). The insurer cites to various other jurisdictions for the proposition that alleged injuries from sexual harassment do not arise from an "occurrence." *See State Farm Fire & Cas. Co. v. Compupay, Inc.*, 654 So. 2d 944, 947 (Fla. Dist. Ct. App. 1995); *Greenman v. Michigan Mut. Ins. Co.*, 433 N.W.2d 346, 349 (Mich. App. 1988). Neither of these cases alleged negligence, however.

The *Cantu* complaint contains seven counts, two of which expressly allege negligence rather than intentional acts excluded from policy coverage. In order to prove a claim for negligent infliction of emotional distress, Cantu must have shown a "clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury." *Hughes v. Moore*, 217 Va. 27, 34 (1973) (emotional agitation absent identifiable physical injury is not compensable). On the facts pleaded, there was no negligent act supporting Count V. Count VII alleges physical injury due to negligence, i.e., the defendants' breach of a duty to provide Cantu with a safe workplace resulted in his physical injury. Simply put, West (a manager rather than an employer) owed Cantu no such duty as pleaded in Count VII. Further, any such actions in the workplace by West would have been covered by the "Business Pursuits" exclusion. Thus, the Insurer was entitled to deny coverage because there was

no "occurrence" as defined under the Policy. The insurer's duty to defend is triggered by the claims asserted, not the insurer's interpretation of the facts alleged. Based upon the claims in the underlying suit, it was certain that the insurer would not be liable under its contract for any judgment. *Parker v. Hartford Fire Ins. Co.*, 222 Va. 33, 35 (1981).

The insurer also argues that it has no duty to defend or indemnify West because the allegations in the *Cantu* complaint fall within the Policy exclusions. First, it asserts that the "Business Pursuits" exclusion applies because all of the *Cantu* allegations arose out of the employer-employee relationship. *See Greenman*, 433 N.W.2d at 349-50; *State Farm Fire & Cas. Co. v. Hiermer*, 720 F. Supp. 1310, 1314-15 (S.D. Ohio 1988). On the face of the *Cantu* pleadings, the court finds that all of the acts complained of by Cantu stem from the course of West's trade, business, or occupation (as the term "business" is defined in the Policy). Count I states that West sexually harassed Cantu by use of her authority as his manager. Count III states that West sexually assaulted and battered Cantu in the course of her employment and by virtue of acting with the scope of her authority as his manager. Count IV alleges that West intentionally inflicted emotional distress on Cantu in the course of her employment and by virtue of acting within the scope of her authority as his manager. Count V alleges negligent infliction of emotional distress and incorporates as the factual basis for the Count the prior paragraphs of the complaint, including the allegations that West was acting in the course of her employment and within the scope of her authority as his manager. Count VI states that West defamed Cantu while acting as his manager. Defamation is also an intentional tort. Count VII alleges that West breached her duty to provide a safe work place for West; obviously, this claim stems from West's trade, business, or occupation. In short, despite certain factual allegations that West's abusive behavior extended beyond the work place to social settings, the insurer was correct in asserting the "Business Pursuits" exclusion because all of the *Cantu* allegations arose out of the employer-employee relationship.

The insurer next invokes the "Expected or Intended Acts" exclusion to deny a defense and indemnity to West. As discussed above, Counts V and VII of the *Cantu* complaint could not have supported a finding of negligence. The conduct was either intentional or it did not occur. As all of the remaining torts alleged in the amended complaint were intentional, the "Expected or Intended Acts" exclusion applied.

In sum, Harleysville Mutual Insurance Co. did not have a duty to defend because the *Cantu* complaint did not allege an "occurrence" for which insurance coverage is provided. Based upon the negligence claims in the underlying suit, it is clear that the insurer would not have been liable under its

contract for any judgment. Further, the *Cantu* complaint falls within the "Business Pursuits" and "Expected or Intended Acts" Policy exclusions. The court finds that, as a matter of law, Harleysville had no duty to defend West. The defendant's Motion for Summary Judgment is sustained.