177 F.Supp.2d 764 (2001)
HOLLOWAY SPORTSWEAR, INC., Plaintiff,
v.
TRANSPORTATION INSURANCE CO., Defendant.
No. C-3-99-595.
United States District Court, S.D. Ohio, Western Division.
September 4, 2001.
*765 Robert Furnier, Todd Flagel, Cincinnati, OH, for Plaintiff.
Edward Goldman, Chad Willits, Cincinnati, OH, for Defendant.

*766 DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 17); DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. # 19); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY
RICE, Chief Judge.
This insurance coverage dispute arises out of the contractual relationship between the Plaintiff Holloway Sportswear, Inc. ("Plaintiff" or "Holloway"), on one hand, and Robert Zeeman ("Zeeman") and certain entities related to or affiliated with Zeeman, particularly R.S.Z. Sales, Inc. ("R.S.Z."), and Lorovi, Inc. ("Lorovi"), on the other. Plaintiff, which is in the business of selling clothing, decided to reduce its costs by acquiring the products it sells from manufacturers located in the Far East ("Asian manufacturers"). The Plaintiff entered into a contractual relationship with Zeeman, whereby the latter would purchase goods on behalf of Plaintiff from the Asin manufacturers in return for the payment of a 5% commission by the Plaintiff.[1] In 1996, Gary Gray ("Gray") left his employment with the Plaintiff and began to work for Hartwell Sports, Inc. ("Hartwell"), a competitor of the Plaintiff. Shortly after commencing his employment with Hartwell, Gray contacted Zeeman to determine whether he would be interested in serving as an agent for Hartwell. Zeeman agreed and began to do so, without informing Plaintiff. In 1997, Plaintiff learned that Lorovi and Zeeman were acting as an agent for its competitor, Hartwell, which caused a dispute between Plaintiff and Zeeman over whether the latter had agreed to be an exclusive agent for Plaintiff. When that dispute was not resolved, Plaintiff stopped payment on a commission check to Lorovi and withheld other sums owed it.[2] Plaintiff also began dealing directly with the Asian manufacturers.
On March 16, 1998, R.S.Z. and Lorovi filed suit against Plaintiff in the Supreme Court for the state of New York ("New York action"). Therein, in addition to seeking to recover the withheld commissions, R.S.Z. and Lorovi set forth a claim of tortious interference with contractual relations, arising out of Plaintiff's direct dealing with the Asian manufacturers. Three days later, Plaintiff filed suit against Zeeman and Lorovi in this Court, setting forth claims of breach of contract, breach of fiduciary duty, fraudulent misrepresentation, theft of trade secrets and tortious interference with contractual relationships ("Ohio action"). See Holloway Sportswear, Inc. v. Robert S. Zeeman, Case No. C-3-98-112, 2000 WL 988267 (S.D.Ohio). That litigation has been resolved and is no longer pending in this Court.
Defendant, which is in the business of insuring risks, issued a policy of insurance to Plaintiff which contained commercial general liability and other coverages. That policy was effective from April 30, 1997, until April 30, 1998. Plaintiff submitted claims to Defendant, requesting that Defendant reimburse it for losses it had been attempting to recover in the Ohio action and that Defendant defend and indemnify *767 it in the New York action. When the Defendant rejected the claims, Plaintiff initiated this lawsuit. In its Amended Complaint (Doc. # 2), Plaintiff sets forth six claims for relief, to wit: 1) a request for declaratory relief that Defendant is obligated to defend and to indemnify it in the New York action; 2) a request for a declaration that Defendant is obligated to indemnify it for Zeeman's theft of trade secrets; 3) a claim for compensatory damages suffered as a result of Defendant's breach of its obligations with respect to the New York action; 4) a claim for compensatory damages suffered as a result of Defendant's breach of its obligations with respect to the Ohio action; 5) a claim that Defendant has acted in bad faith with respect to the New York action; and 6) a request for an award of punitive damages as a result of the Defendant's bad faith with respect to the New York action. As can be seen, the Plaintiff's First, Third, Fifth and Sixth Claims relate to the New York action, while its Second and Fourth Claims pertain to the Ohio action.
This case is now before the Court on Defendant's Motion for Summary Judgment (Doc. # 17) and Plaintiff's Motion for Partial Summary Judgment (Doc. # 19). As a means of analysis, the Court will initially set forth the standards which are applicable to all motions for summary judgment, partial or otherwise, following which it will turn to the parties' arguments in support and in opposition to the two such motions currently pending in this litigation.
Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:
always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
Id. at 323, 106 S.Ct. 2548. See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).
Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is *768 some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... `genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. Anderson, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the non-moving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc., 9 F.3d 561 (7th Cir.1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.
With its motion, Defendant seeks summary judgment on all six claims asserted by Plaintiff. In its motion, Plaintiff argues that it is entitled to summary judgment on its First and Third Claim for Relief, with which it seeks declaratory relief that Defendant is obligated to defend and to indemnify it in the New York action and to recover compensatory damages allegedly caused by Defendant's refusal to provide such a defense and indemnity. As a means of analysis, the Court will initially address the parties' arguments pertaining to the New York action, following which it will turn to the Ohio action.

I. New York Action
The initial question presented by the parties' motions is whether Defendant had a duty to defend Plaintiff in the New York action. The parties both analyze *769 that issue by utilizing the standards that are part of the substantive law of Ohio; therefore, the Court begins its analysis by reviewing Ohio law.[3] In Willoughby Hills v. Cincinnati Ins. Co., 9 Ohio St.3d 177, 459 N.E.2d 555 (1984), the Ohio Supreme Court held in the syllabus:
Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.
An insurer is not obligated to defend, however, where there is no possibility of coverage. Wedge Products, Inc. v. Hartford Equity Sales Co., 31 Ohio St.3d 65, 509 N.E.2d 74 (1987). When an insurer has a duty to defend one claim asserted against its insured in a lawsuit, it must defend the entire lawsuit, even though other claims may not come within the coverage of the policy. Preferred Mutual Insurance Company v. Thompson, 23 Ohio St.3d 78, 491 N.E.2d 688 (1986).
In arguing that Defendant had a duty to defend it in the New York action, Plaintiff focuses upon the claim of tortious interference with business relationships set forth in that litigation.[4] In particular, R.S.Z. and Lorovi alleged:
43. [Holloway] has interfered with the economic relations between Plaintiffs and its (sic) manufacturing sources by unfairly and improperly contacting said customers, sources and contacts directly.
44. By virtue of the dishonest, improper and unfair acts taken by [Holloway], as described herein, Plaintiffs' economic relations with their customers and contacts have been irretrievably harmed.
Stipulations (Doc. # 10) at Exhibit B. In the portion of their Complaint setting forth the background of their dispute with Holloway, R.S.Z. and Lorovi alleged:
18. In addition, [Holloway] has circumvented Plaintiffs by directly contacting and contracting with Plaintiffs' manufacturing sources. All of said sources were obtained solely as a result of Plaintiffs' efforts, expertise and contacts.
19. Plaintiffs' business has been irretrievably damaged by [Holloway] contacting Plaintiffs' sources to the exclusion of Plaintiffs.
Id.
According to the Plaintiff, the allegations in ¶¶ 43-44 arguably or potentially come within the coverage afforded by the policy for advertising injuries and personal injuries. The policy provides that the Defendant "will pay those sums that the insured becomes legally obligated to pay as damages because of `personal injury' or `advertising injury' to which this insurance applies." Id. at Exhibit A. The insurance applies to:
(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting *770 or telecasting done by or for you; [and]
(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services.
Id. "Personal injury" is defined by the policy as an "injury, other than `bodily injury,' arising out of one or more of the following offenses." Id. Among the offenses listed is "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."[5]Id. In relevant part, the definition of "advertising injury" is identical to the definition of "personal injury."
As is indicated, the Plaintiff contends that Defendant had a duty to defend and to indemnify it in the New York action, because the tortious interference claim asserted against it in that litigation comes within the coverage afforded by the policy for advertising and personal injuries. The Court need not devote a significant amount of time to the question of whether the tortious interference claim constitutes an advertising injury. The policy pellucidly provides that the insurance applies only to an advertising injury which is "caused by an offense committed in the course of advertising your goods, products or services." There is no allegation in the New York action that Holloway injured R.S.Z. and/or Lorovi in the course of advertising its goods, products or services. Therefore, the Court concludes that the tortious interference claim does not come within the policy's coverage for advertising injuries.
The Plaintiff also argues that the tortious interference claim comes within the coverage afforded by the policy for personal injuries. According to Plaintiff, its alleged "dishonest, improper and unfair" contacts with the manufacturing sources of R.S.Z. and Lorovi must have involved communications (i.e., oral or written publications) which potentially or arguably could have included defamatory or disparaging comments, as a result of the allegation that the Plaintiff engaged in dishonest, improper and unfair contacts with the Asian manufacturers. See Doc. # 19 at 6. Thus, Plaintiff's argument continues, the allegations of tortious interference, in the Complaint filed by R.S.Z. and Lorovi, come within the coverage for personal injuries. Not surprisingly, Defendant does not agree; rather, it contends that there is no allegation in the Complaint filed in the New York action which potentially or arguably suggests that Holloway defamed or disparaged R.S.Z. and Lorovi in its communications with the Asian manufacturers. Consequently, Defendant's argument continues, there is no possibility of coverage for the tortious interference claim, and it is entitled to summary judgment on Plaintiff's claims arising out of the New York action. For reasons which follow, this Court agrees that Defendant is entitled to summary judgment on Plaintiff's First, Third, Fifth and Sixth Claims for Relief.
The Complaint in the New York action clearly sets forth the theory that Holloway tortiously interfered by circumventing the role that R.S.Z. and Lorovi had played as middlemen between Holloway and the Asian manufacturers. That role had permitted R.S.Z. and Lorovi to earn commissions. The payment of those commissions ceased once Plaintiff had by-passed them. There is no hint in the *771 Complaint filed in the New York action that Holloway defamed or disparaged R.S.Z. or Lorovi. To state a claim for defamation under New York law,[6] the plaintiff must allege that the defendant made a false statement. Foster v. Churchill, 87 N.Y.2d 744, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996). The plaintiff must also plead the actual words which were spoken or written. Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759, 763 (2nd Cir. 1990) (applying New York law). R.S.Z. and Lorovi did not allege that Holloway published a false statement about them, let alone pleading the actual words which were spoken or written. A claim of disparagement focuses on the quality of the plaintiff's goods or services and is based upon an allegation that the defendant denigrated the plaintiff's goods or services through a false statement. See e.g.,De Marco-Stone Funeral Home, Inc. v. WRGB Broadcasting, Inc., 203 A.D.2d 780, 610 N.Y.S.2d 666 (1994). A plaintiff asserting a claim of disparagement must allege, inter alia, that the defendant acted with malice. Id. Malice requires a showing of ill will. Abernathy & Closther v. Buffalo Broadcasting Co., 176 A.D.2d 300, 574 N.Y.S.2d 568 (1991). R.S.Z. and Lorovi did not remotely allege in the New York action that Holloway had falsely denigrated their services as middlemen. Rather, they asserted that Holloway had prevented them from continuing to earn commissions by contacting the Asian manufacturers directly. That allegation is fully supported by the affidavit Zeeman filed in the Ohio action, explaining that Holloway stopped using R.S.Z. and Lorovi as its buying agent and began to deal directly with the overseas manufacturers, thereby cheating them out of future commissions.
In sum, the Court concludes that R.S.Z. and Lorovi did not arguably or potentially allege in their tortious interference claim in the New York action that Holloway defamed or disparaged them or their services. Rather, Holloway is alleged to have tortiously interfered merely by placing itself between them and the Asian manufacturers and, thus, to have deprived them of the opportunity to earn commissions in the future. Accordingly, there is no possibility that the tortious interference claim came within the coverage afforded by the policy, and the Defendant did not have a duty to defend the New York action. The Court's conclusion in that regard is buttressed by the decision of the Franklin County Court of Appeals in Motorists Mutual Insurance Co. v. National Dairy Herd Improvement Association, Inc., 141 Ohio App.3d 269, 750 N.E.2d 1169 (2001). Therein, an insurer sought declaratory relief to the effect that it was not obligated to defend the defendant in a lawsuit in which Agritronics Corporation alleged, inter alia, that the defendant had tortiously interfered with its prospective business. The insurance policy therein, like that at issue in this litigation, provided coverage for personal and advertising injuries. Since those phrases were defined in the same manner as in the policy at issue in this litigation, the issue was whether the defendant had defamed or disparaged Agritronics. Based upon its review of the elements of claims of defamation and disparagement under the substantive law of New York,[7] the Franklin County Court of Appeals concluded *772 that the plaintiff did not have a duty to defend, since Agritronics had not alleged that the defendant had made a false statement.
Given the absence of a duty to defend, the Defendant is not obligated to indemnify the Plaintiff.[8] In Red Head Brass, Inc. v. Buckeye Union Ins. Co., 135 Ohio App.3d 616, 625, 735 N.E.2d 48, 54 (1999), the court reiterated that it is "well-established law in this state that an insurer's duty to defend is broader than the duty to indemnify. Socony-Vacuum Oil Co. v. Continental Cas. Co. (1945), 144 Ohio St. 382, 29 O.O. 563, 59 N.E.2d 199, paragraph one of the syllabus." In addition, since the tortious interference claim did not come within the coverage afforded by the policy, the Defendant cannot have acted in bad faith by refusing to defend the New York action, and the Plaintiff cannot be entitled to recover punitive damages as a result of Defendant's alleged bad faith refusal to defend.
Based upon the foregoing, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 17), as it relates to the Plaintiff's First, Third, Fifth and Sixth Claims for Relief. In addition, the Court overrules Plaintiff's Motion for Partial Summary Judgment (Doc. # 19).

II. Ohio Action
In its Amended Complaint, Plaintiff alleges that Zeeman is its former employee and that he stole its sportswear designs and other trade secrets, including confidential pricing information, which he sold to a competitor. Doc. # 2 at ¶ 11. Plaintiff contends that Defendant had an obligation to compensate it for the losses it suffered as a result, in accordance with the portion of the insurance policy governing employee dishonesty and that Defendant has breached the policy by failing to pay such compensation. Id. at ¶¶ 12, 14. These allegations serve as the basis for the Plaintiff's Second and Fourth Claims for Relief. The Defendant has moved for summary judgment on those claims, arguing, inter alia, that the loss of trade secrets and other confidential commercial information is not covered by the policy. The Plaintiff has not responded to the Defendant's request for summary judgment on the Second and Fourth Claims for Relief. For reasons which follow, the Court concludes that Defendant is entitled to summary judgment on those claims.
Under the insurance, the Defendant is obligated to compensate the Plaintiff for the damages it suffers to "covered property" as a result of employee dishonesty. Doc. # 10 at Exhibit A. "Covered property" is defined to include "money," "securities" and "property other than money and securities." Id. "Property other than money and securities" is defined as tangible property, other than "money" and "securities." Id. Thus, intangible property does not come within "covered property," as that phrase is defined by the policy. Ohio courts have held that trade secrets and other confidential commercial information are intangible property. See e.g., Consumer Direct, Inc. v. Limbach, 62 Ohio St.3d 180, 580 N.E.2d 1073 (1991). Since trade secrets are intangible property, they do not come within the definition of covered property; therefore, Defendant is not obligated to compensate Plaintiff for the losses it suffered to its trade secrets as a result of Zeeman's alleged dishonesty (assuming that Zeeman was Plaintiff's employee, rather than being an independent contractor).
*773 Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 19), as it relates to Plaintiff's Second and Fourth Claims for Relief.
Based upon the foregoing, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 17) in its entirety and overrules the Plaintiff's Motion for Partial Summary Judgment (Doc. # 19). Judgment is to be entered in favor of Defendant and against Plaintiff.
The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.
NOTES
[1] In 1996, Zeeman informed Plaintiff that he had begun working for Lorovi, which resulted in the Plaintiff paying the commissions to Lorovi. Otherwise, the relationship between the parties did not change as a result.
[2] Apparently, Plaintiff took these actions under the belief that the Zeeman and Lorovi had breached the contract between the parties by acting as an agent for Hartwell and that, therefore, they were not entitled to receive commissions from Plaintiff.
[3] Plaintiff has invoked this Court's diversity jurisdiction; therefore, it must apply Ohio's choice-of-law principles. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In their memoranda, the parties have cited and relied upon the law of Ohio. Since the parties have not argued that Ohio's choice-of-law principles mandate the application of another state's substantive law and, further, given that they have relied upon the substantive law of Ohio, this Court will apply the law of this state.
[4] Plaintiff neither alleges nor argues that any other claim set forth against it in the New York action serves as the basis for imposing the duty to defend upon the Defendant.
[5] The other offenses set forth in the policy as coming within the definition of "personal injury" are false arrest, detention or imprisonment; malicious prosecution; wrongful eviction or entry onto the property of another; and the oral or written publication of material that constitutes an invasion of privacy. Doc. # 10 at Exhibit A, p. 9. The Plaintiff does not contend that any of those matters afford it coverage.
[6] The Defendant argues that the claims R.S.Z. and Lorovi did assert or could have asserted against Plaintiff in the New York action are governed by the substantive law of New York. Given that the Plaintiff has not argued to the contrary, this Court will employ the substantive law of New York, when analyzing the claims which were or which could have been asserted in the New York action.
[7] As with this litigation, the underlying lawsuit giving rise to the coverage dispute in Motorists Mutual had been filed in New York.
[8] Plaintiff argues that it is entitled to indemnification for the amount it paid to settle the New York action, because Defendant breached its duty to defend. Since the Court has concluded that the Defendant did not have a duty to defend, it rejects the Plaintiff's argument that it is entitled to indemnification.