PLAINVIEW MILK PRODUCTS CO-
OPERATIVE, being sued as Plain-
view Milk Cooperative, a Minnesota
non-profit cooperative, Plaintiff,

v.

WESTPORT INSURANCE CORPO-
RATION, a New York Stock
Company, Defendant.

No. 01–63 (DWF/AJB).

United States District Court,
D. Minnesota.

Nov. 21, 2001.

Edward F. Fox, Oppenheimer, Wolff &
Donnelly, Minneapolis, MN, appeared on
behalf of Plaintiff.

Daniel Aronowitz, Ross, Dixon & Bell,
Washington, D.C., Patrick Robben, Rider,
Bennett, Egan & Arundel, Minneapolis,
MN, appeared on behalf of Defendant.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

The above-entitled matter came on for
hearing before the undersigned United
States District Judge on November 16,
2001, pursuant to cross-motions for sum-
mary judgment. For the reasons stated,
Plaintiff's motion for summary judgment is
denied, and Defendant's motion for sum-
mary judgment is granted.

### Background

Plaintiff Plainview Milk Cooperative
("Plainview") is a nonprofit cooperative
which sells the milk of its member dairy
farmers to various milk processing compa-
nies. Marigold Foods, Inc. ("Marigold") is
one of the milk processors to whom Plain-
view sells milk. Over the course of ap-
proximately five years, Plainview inadver-
tently overcharged Marigold. The excess
money collected by Plainview was distrib-
uted to Plainview's cooperative members.[1]

---

1. In oral argument on these motions, Plain-
view argued that this was not a simple case of
over-billing. Indeed, the USDA heavily regu-
lates the milk industry, and the overcharge to
Marigold actually occurred because both

Plainview and the USDA were charging Mari-
gold the same fee. There is no question that
Plainview's error was inadvertent or that the
error was the result of the complex regulatory
scheme governing milk sales. The end result,

When the billing errors were discovered, Marigold demanded reimbursements for the overpayments from Plainview. Plainview entered into a settlement agreement with Marigold; under the terms of that agreement, Plainview agreed to pay Marigold $750,000 over the course of five years.

Plainview then sought indemnification of the $750,000 under Plainview's error's and omissions insurance policy from Defendant Westport Insurance Corporation ("Westport"). Westport denied Plainview's claim, and Plainview commenced the current declaratory judgment action against Westport.

Plainview originally obtained nonprofit organization liability insurance from Coregis Insurance Company ("Coregis"). Coregis issued two identical policies (hereinafter, collectively, "the Coregis policy") to Plainview for the policy years October 1, 1997, through October 1, 1998, and October 1, 1998, through October 1, 1999. Following a corporate acquisition, Westport assumed the underwriting of all of Coregis's former insurance business. Accordingly, Westport issued two policies to Plainview for the policy years October 1, 1999, through October 1, 2000, and October 1, 2000, through October 1, 2001; these policies (hereinafter, collectively, "the Westport policy") are identical to one another, but they are worded somewhat differently than the Coregis policy.

### Discussion

#### 1. Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn

from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir.1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R.Civ.P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Generally, the moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik*, 47 F.3d at 957. Here, however, the parties agree that summary judgment is appropriate because the sole question involves interpretation, as a matter of law, of an insurance policy.

#### 2. Which Policy Applies?

Plainview asserts that the Westport policy represents a substantial reduction in coverage from the Coregis policy. According to Plainview, because Westport sub-

---

however, was that Plainview charged Marigold more than it should have, and the excess monies collected by Plainview were distributed to Plainview's cooperative members. *See*

Ex. H to the Declaration of Timothy C. Krsul in Support of Plainview's Motion for Summary Judgment.

stantially reduced coverage without notifying Plainview of the coverage change, the changes are void and coverage should be determined under the Coregis policy. *See Canadian Universal Ins. Co. v. Fire Watch, Inc.,* 258 N.W.2d 570, 575 (Minn. 1977) (if an insurer substantially reduces coverage without notifying the insured, the changes to the policy are void).

Westport argues that the Westport policy and the Coregis policy are essentially the same and that the changes in wording between the two have no effect on the scope of coverage. Thus, Westport asserts that the Court should properly consider the Westport policy but that there is no coverage under either policy.

The Court need not squarely address whether the Coregis policy and the Westport policy provide the same coverage. If Plainview is correct about the scope issue, then the Court should look at the Coregis policy. However, if Westport is correct about the scope issue, then it should not matter whether the Court looks at the Westport language or the Coregis language. Thus, no matter who is correct, the Court may properly limit its inquiry to the Coregis policy. In other words, the issue of which policy the Court considers is only determinative if, in fact, the Westport and Coregis policies are different, and, if they are different, the Court should look at the Coregis policy. Thus, for purposes of the summary judgment motions, the Court limits its inquiry on the issue of coverage to the Coregis policy.

### 3. Is There Coverage?

The parties have spent a great deal of time debating the meaning of many of the policy terms and the application of a variety of policy provisions. Ultimately, however, the Court finds that there is no coverage for the disputed claim because that claim falls within the scope of Exclusion A of the Coregis policy.

■ Exclusion A excludes coverage for "[a]ny claim based upon, alleging or arising out of the gaining of any personal profit or advantage to which the insured is not legally entitled" (emphasis deleted). The claim at issue is based upon an allegation that Plainview, the insured, obtained money to which it was not legally entitled. Thus, on its face, Exclusion A applies.

Plainview argues that Exclusion A does not apply because it is triggered only when a natural person obtains a profit or advantage to which it is not legally entitled. Here, no insured natural person obtained any profit or advantage; rather, Plainview, as a corporate entity, obtained the profit or advantage. Plainview's argument is based on the fact that "profit" and "advantage" are modified by the term "personal," which, Plainview asserts, implies application only to natural persons. The Court does not agree with Plainview's logic.

First, Plainview contends that "[p]rofit by officers and directors is the only circumstance in which this exclusion has been applied." Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment at 18, n. 6. In support of that proposition, Plainview relies upon *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Illinois Corp.,* 666 F.Supp. 1180 (N.D.Ill.1987), and *In re Donald Sheldon & Co., Inc.,* 186 B.R. 364 (S.D.N.Y.1995). In these cases, the courts were called upon to determine the applicability of similar exclusions in situations where the alleged profit was had by individual directors of the insured corporations. However, the cases do not squarely address the question of whether the exclusion could or would apply if the alleged profit was had by the insured corporation itself.

Moreover, in *Harrisburg Area Community College v. Pacific Employers Ins. Co.,* 682 F.Supp. 805, 812–813 (M.D.Pa.1988),

the court considered whether an exclusion for claims based on personal profit and advantage applied to a claim that a community college-not a natural person-erroneously received federal Pell grant money. Although the *Harrisburg* court determined that the exclusion did not apply to the facts of that case, its decision was not based upon the fact that the insured entity which allegedly profited was not a natural person. Rather, the discussion in that case appears to presuppose that the exclusion could apply to profit or advantage accruing to the insured entity, and the court simply found that there was no such profit or advantage.

On its face, Exclusion A applies to any claim in which an insured acquires profit or advantage to which it is not legally entitled. Plainview, as a corporate entity, is an insured. The Court finds no reason, in either the policy language itself or the cases cited by Plainview, to limit the definition of "insured" for purposes of Exclusion A to natural persons.

■ Plainview further argues that Exclusion A does not apply because it did not obtain any profit from its overcharge of Marigold. Plainview is a nonprofit entity which, by definition, cannot enjoy a profit; indeed, Plainview did not retain the money it overcharged Marigold, but, instead, disbursed those additional funds to its member farmers. According to Plainview, because of this disbursement, Exclusion A does not apply.

The Court does not agree. First, as Westport points out, the simple fact that Plainview did not retain its unearned profit does not mean that it did not receive such a profit. To borrow an apt analogy from Westport, if a man steals money and then loses it at the track, he nevertheless stole the money; he reaped an unearned profit even if he proceeded to lose that money the very same day.[2] Westport further argues, with some merit, that the profit of Plainview's member farmers is legally equivalent to the profit of Plainview itself because, as a nonprofit cooperative, Plainview *is* its member farmers.

Yet even if the overcharged amount does not constitute a "profit" within the meaning of Exclusion A, it certainly constitutes an "advantage." Plainview's ability to provide its membership with dividends is, without question, a corporate advantage. Here, it was a corporate advantage to which Plainview was not legally entitled.

Because the Court finds that, on its face, Exclusion A applies to the claim at issue, the Court need not address the varied and creative claims of the parties regarding the meaning of the term "loss," the scope of the "non-monetary claims" provision, and the application of public policy to the situation at hand. The Court finds that, because of the operation of Exclusion A, there is no coverage for the claim at issue.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Doc. No. 22) is **DENIED;** and

2. Defendant's Motion for Summary Judgment (Doc. No. 27) is **GRANTED;**

3. The **COMPLAINT** is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

**2.** Obviously, there is no allegation that Plainview obtained any money through a criminal act or other malfeasance. There is no question that the overcharge to Marigold was an innocent and understandable error.