# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-1425

BROWN & LACOUNTE, L.L.P.,

*Plaintiff-Appellant*,

v.

WESTPORT INSURANCE CORPORATION,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 01-C-0546-S—**John C. Shabaz**, *Judge.*

———————

ARGUED SEPTEMBER 10, 2002—DECIDED OCTOBER 10, 2002

———————

Before FLAUM, *Chief Judge*, and BAUER and MANION, *Circuit Judges*.

FLAUM, *Chief Judge.* The law firm of Brown & LaCounte, L.L.P. sought a declaration of coverage under its professional liability insurance policy with Westport Insurance Corporation for a claim arising out of a lawsuit filed by the Saginaw Chippewa Indian Tribe of Michigan. The district court held that because the insurance policy's "personal profit" exclusion barred Brown & LaCounte's claim for coverage, Westport Insurance Corp. had no duty to defend. For the reasons stated below, we affirm.

## I.  Background

Brown & LaCounte, L.L.P. ("Brown"), a Wisconsin law firm, obtained a professional liability insurance policy from Kansas-based Westport Insurance Corp. ("Westport") in August 2000. Two months later the Saginaw Chippewa Indian Tribe of Michigan ("Tribe") filed a civil action against Brown alleging the firm improperly received and kept payments for legal services rendered under a void contract.[1] The Tribe's complaint sought a declaration that the contract was unenforceable, an accounting for and return of all monies paid to Brown for legal services performed, and payment of attorneys' fees and costs incurred by the Tribe in bringing the action. Brown promptly requested defense and indemnification against the Tribe's lawsuit from Westport under the terms of its policy, and Westport swiftly responded, denying coverage and refusing to defend Brown.

In August 2001, Brown filed suit against Westport in federal district court seeking a declaration of coverage and demanding reimbursement of defense costs. Westport then entered its counterclaim for a declaration of no coverage. On cross-motions for summary judgment the district court held that Brown was not entitled to defense or indemnification from Westport under the policy because the policy's personal profit exclusion barred Brown's claim.[2]

---

[1] Under the Tribe's constitution and federal law, 25 U.S.C. § 476(e), Brown was required to obtain approval of its contract for legal services with the Tribe from the Secretary of the Interior. The Tribe argues that because Brown never secured this approval, the contract between them was unenforceable.

[2] The personal profit exclusion provides that "[t]his POLICY shall not apply to any CLAIM based upon, arising out of, attributable
(continued...)

On appeal Brown argues the district court erred in interpreting the policy's personal profit exclusion to bar its claim and urges this court to find that Westport has a duty to defend because Brown has committed a wrongful act and suffered a loss within the meaning of the policy.

## II.  Discussion

We review the district court's grant of summary judgment *de novo. Carney v. Village of Darien*, 60 F.3d 1273, 1276 (7th Cir. 1995). A court's interpretation of the terms and coverage of an insurance policy is purely a question of law and therefore appropriately resolved on summary judgment. *Kaun v. Indus. Fire & Cas. Ins. Co.*, 436 N.W.2d 321, 323 (Wis. 1989); *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 337 (7th Cir. 1992) ("the construction of an insurance policy contract is a question of law"). In this diversity action the parties agree that Wisconsin law applies to interpret the meaning and scope of the policy's coverage.

In deciding whether Westport has a duty to defend, we must determine whether the allegations against Brown are covered by the policy. *Smith v. Katz*, 595 N.W.2d 345, 350 (Wis. 1999) (comparing the type of claims against the insured with the terms of the policy to determine the duty to defend). We find the Tribe's allegations against Brown comprise just the sort of claim barred by the policy's personal profit exclusion. Thus, we affirm the district court's decision that Westport has no duty to defend Brown in its lawsuit against the Tribe.

---

[2] (...continued)
to, or directly or indirectly resulting from . . . any INSURED having gained in fact any personal profit or advantage to which he or she was not legally entitled[.]"

Brown claims the district court made two mistakes when it interpreted the personal profit exclusion to deny Brown coverage under the policy. First Brown argues the words "he or she" in the exclusion refer only to individual insured lawyers of the firm and not the firm itself, a genderless entity. Since the law firm of Brown & LaCounte, and not any individual lawyer, received and profited from the fees paid by the Tribe, Brown maintains that the exclusion does not apply to its claim. Second Brown argues the words "in fact" in the exclusion require Westport to affirmatively prove Brown gained an illegal profit before denying coverage. Brown claims Westport wrongly based its denial of coverage on the Tribe's allegations alone and therefore must defend Brown in the underlying litigation until the allegations are either proven or dismissed. For the reasons explained below, we reject both of these arguments.

First Brown argues the use of the words "he or she" in the personal profit exclusion must necessarily limit application of the exclusion to only individual insured persons, and not an insured law firm. The district court regarded this construction of the exclusion as "unreasonable," and we agree. Under Wisconsin law insurance contract terms are given their plain meaning where possible, in consideration of the parties' intent. *Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 607 N.W.2d 276, 282 (Wis. 2000). As with other contracts, if an insurance policy's terms are ambiguous, the ambiguity is resolved against the drafter. *Id.* at 283. This does not mean we are in he habit of rewriting policies to provide coverage that the insurer did not contemplate. Rather, we interpret the terms as a reasonable person in the position of the insured would read them. *Id.*

Here, the exclusion applies to claims resulting from "any INSURED having gained in fact any personal profit or advantage to which he or she was not legally entitled." The

term INSURED is defined in the Policy as the NAMED INSURED, and NAMED INSURED is further defined as "the person or entity listed in the Declarations." The entity listed in the declarations section of this policy is "Brown & LaCounte, L.L.P." Thus, the most natural and reasonable interpretation of the personal profit exclusion is that the entity of Brown & LaCounte, L.L.P. is included within the meaning of "any INSURED."

Additionally, other courts interpreting similar insurance policies, albeit without the "he or she" language, have held that the phrase "personal profit" in a policy exclusion should not be read as limiting the exclusion to only natural persons. *Commercial Union Ins. Co. v. Auto Europe, L.L.C.*, 2002 WL 314380 *4 (N.D. Ill. 2002) (holding a personal profit exclusion applicable to an insured corporation where "the purpose of the exclusion was to exclude coverage when the *insured* received profits to which the *insured* was not legally entitled"). *See also Plainview Milk Products Coop. v. Westport Ins. Co.*, 182 F. Supp. 2d 852, 855 (D. Minn. 2001) (rejecting insured's argument that the personal profit exclusion did not apply where the illegal profits were gained by a milk producer's cooperative and not individual persons). Brown tries to distinguish *Commercial Union* and *Plainview* by arguing that the policy in this case is "non-standard" because it includes the "he or she" language where the other policies do not. Based on this, Brown urges this court to give some different, additional meaning to these words. We decline to do so.

Under Wisconsin law we give unambiguous insurance contract terms their plain meaning, and we do not rewrite policies in contravention of the parties' intent. *Wis. Label Corp.*, 607 N.W.2d at 282. In this case, the defined term INSURED is unambiguous and its plain meaning as used in the personal profit exclusion clearly embraces the named entity of Brown & LaCounte, L.L.P. Thus, we will not construe the personal profit exclusion to give added

meaning to the terms "he or she" where there is no indication elsewhere in the policy that the parties intended that result.

Brown's second argument posits that the words "in fact" in the personal profit exclusion mean Westport cannot deny coverage until it proves the allegations of illegal profiteering against Brown. Under this theory, an insurer could never invoke the exclusion to deny coverage without first litigating the underlying allegations. We reject this approach as it runs counter to well-established principles of Wisconsin insurance contract law. First, it ignores a basic rule of interpretation that language in a contract should be construed as having some purpose, rather than be avoided or rendered meaningless. *See Nelson v. Boos*, 96 N.W.2d 813, 817 (Wis. 1959). The personal profit exclusion is one of several exclusions in the policy designed to categorically exclude certain kinds of claims from coverage. Brown's interpretation, however, makes the exclusion inapplicable to any case because Westport could never use it to exclude a claim until it defended the underlying action. This would render the personal profit exclusion meaningless in contravention of both the plain language of the policy and the parties' apparent contractual intent to exclude some kinds of claims from coverage.

Second, the interpretation of an insurance policy to determine its scope of coverage is a question of law and not fact. *United Nat'l Ins. Co.*, 953 F.2d at 337. Brown's insistence that we cannot decide whether Westport may invoke the personal profit exclusion until the underlying allegations are proved is incorrect. In support of its position, Brown relies on cases where courts found mere allegations of receiving illegal profits insufficient to trigger personal profit exclusions similar to the one in this case. *See Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 197 F.3d 742 (5th Cir. 1999); *Alstrin v. St. Paul*

*Mercury Ins. Co.*, 179 F. Supp. 2d 376 (D. Del. 2002); *Aetna Cas. & Sur. Co. v. Clasby*, 788 F. Supp. 61 (D. Mass. 1991); *Gardner v. Cumis Ins. Soc'y, Inc.*, 582 So.2d 1094 (Ala. 1991); *Int'l Ins. Co. v. Johns*, 685 F. Supp. 1230 (S.D. Fla. 1988); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Cont'l Ill. Corp.*, 666 F. Supp. 1180 (N.D. Ill. 1987). However, all of those cases are easily distinguished from this one because they concern allegations of breaches of fiduciary duty where the dispute concerned the illegality of the actions taken or profits received. In those cases the courts focused not on whether the insurer had "in fact" proven the underlying allegations against the insured, but simply whether there was sufficient evidence in the underlying complaint to show the profits received were illegal or undeserved within the meaning of the exclusion.

In this case, however, the underlying complaint directly and unequivocally alleges that Brown reaped an illegal profit. In its complaint, the Tribe alleges Brown "billed the Tribe and received payment therefrom for legal services provided without a federally-approved attorney contract." Under the policy, coverage is excluded for claims where "any INSURED gained in fact any personal profit or advantage to which he or she was not legally entitled." Comparing the two it is clear that the Tribe's complaint against Brown is the same kind of claim expressly excluded from coverage under the policy. We need not inquire further into the merits of the Tribe's allegations in order to find that Westport has no duty to defend Brown in the underlying action.

Because we find the personal profit exclusion applies to Brown's claim for coverage in this case, we need not address Brown's alternative arguments concerning the meaning of "loss" and "wrongful act" under the policy. Similarly, because we find Westport has no duty to defend, we need not address Brown's arguments concerning breach of duty and damages.

### III.  Conclusion

We affirm the district court's decision that Brown is not entitled to defense by Westport under its professional liability insurance policy because Brown's claim for coverage is barred by the policy's personal profit exclusion.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*