OPINION
{¶ 1} National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), third-party defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court granted summary judgment to Leadscope, Inc., Paul E. Blower, Jr., Wayne P. Johnson, and Glenn J. Myatt, defendants-third-party plaintiffs-appellees (referred to collectively as "appellees").
 {¶ 2} Blower, Johnson, and Myatt worked for The American Chemical Society ("ACS"). While employed at ACS, Blower, Johnson, and Myatt signed employment agreements prohibiting them from disclosing certain protected information and providing that ACS would own the property rights to certain employee creations. In early 1995, while employed by ACS, Blower and Myatt developed a software program called CAPathfinder. In November 1997, Blower, Johnson, and Myatt resigned from ACS, and one month later formed Columbus Molecular Software, Inc., which was merged into Leadscope in June 2000. In early 1998, Blower, Johnson, and Myatt designed a software program similar to CAPathfinder. In January 1999, Blower, Johnson, and Myatt filed a patent application for the software, and a patent was issued in November 2001. ACS believed that the patent was based upon ACS's protected information, and requested from Leadscope that all interest in the patent be assigned to ACS and Leadscope compensate ACS for lost sales opportunities and development costs.
 {¶ 3} After Leadscope failed to respond, ACS filed an action in federal court against appellees on May 1, 2002. During the pertinent period, appellees were insured by a directors, officers, and private company liability insurance policy ("policy") issued by National Union. On May 3, 2002, Leadscope gave notice of the lawsuit to National Union and requested advancement of legal defense costs pursuant to the policy.
 {¶ 4} On July 12, 2002, ACS dismissed the federal case and filed the action in the Franklin County Court of Common Pleas. As against all of the appellees, ACS alleged misappropriation of trade secrets, common-law unfair competition, and implied license under the shop-right doctrine. As against Blower, Johnson, and Myatt, ACS alleged breach of employment agreement, breach of fiduciary duty and duty of loyalty, and conversion. On August 2, 2002, National Union denied coverage and refused to advance legal fees to Leadscope, claiming the policy in question did not provide coverage for the causes of action brought by ACS against appellees.
 {¶ 5} On March 25, 2003, appellees filed a third-party complaint against National Union in the Franklin County action seeking a determination that National Union was required by the policy to advance legal fees incurred in defending the action by ACS. On July 29, 2003, appellees filed their motion for partial summary judgment against National Union. On September 2, 2003, National Union filed a motion for summary judgment. The parties filed various related pleadings and supplements thereafter. On February 20, 2004, the trial court granted appellees' motion for partial summary judgment and denied National Union's motion for summary judgment. The trial court found that ACS's claim for conversion was not expressly excluded by the National Union policy. The trial court also held that, because the conversion claim by ACS against appellees fell within the scope of coverage of National Union, National Union had a duty to reimburse appellees for defending all of the claims ACS brought against appellees. On March 22, 2004, the trial court issued a judgment in which it found no just reason for delay. National Union appeals the judgment of the trial court, asserting the following assignment of error:
The trial court erred in denying the motion for summary judgment of third-party defendant national union fire insurance company of pittsburgh, pa, and in granting the motion for summary judgment of third-party plaintiffs.
 {¶ 6} National Union argues in its assignment of error that the trial court erred in granting summary judgment to appellees and in denying its motion for summary judgment. Pursuant to Civ.R. 56(C), summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor SoccerClub (1998), 82 Ohio St.3d 367. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v.Burt (1996), 75 Ohio St.3d 280, 292-293. Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359. Appellate review of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105; Zemcikv. LaPine Truck Sales Equip. (1998), 124 Ohio App.3d 581, 585.
 {¶ 7} We will first address National Union's argument that appellees are entitled to advancement of defense costs incurred in defending only claims that are individually covered. In finding that National Union had a "duty to defend and/or duty to advance defense costs" to appellees, the trial court first found that the "pleadings test" applied. The "pleadings test," as it is only occasionally referred to as, provides:
The test of the duty of an insurance company, under a policy of liability insurance, to defend an action against an insured, is the scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured.
Motorists Mutual v. Trainor (1973), 33 Ohio St.2d 41, paragraph two of the syllabus. This "pleadings test" was later expanded in WilloughbyHills v. Cincinnati Ins. Co. (1984), 9 Ohio St.3d 177, syllabus:
Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.
 {¶ 8} Relying on the Ohio Supreme Court's decision in Preferred Mut.Ins. Co. v. Thompson (1986), 23 Ohio St.3d 78, 80, the trial court in the present case went on to find that, when a complaint against an insured states several claims based on the same occurrence, and the insured is contractually obligated to the insured for one claim, it has the duty to defend the insured against all claims, regardless of the ultimate outcome of the action or the insurer's ultimate liability to the insured (for ease of reference, we will refer to this principle hereafter as the "one claim-all claims" principle). Only if there is no possibility of coverage under the policy based on the allegations in the complaint will the insurer not have a duty to defend the action. See Wedge Products, Inc.v. Hartford Equity Sales Co. (1987), 31 Ohio St.3d 65. The trial court then concluded that, because ACS's claim for conversion was covered, National Union owed a "duty to defend" appellees against all the claims in ACS's complaint, whether or not the remaining claims were covered.
 {¶ 9} We first note that, in making its arguments, National Union seems to refer to both the "pleadings test" and the "one claim-all claims" principle together as the "pleadings test." Although these principles are related and are often cited successively when discussing the duty to defend, these two principles appear to be separate and derive from different lines of case law. Notwithstanding, the gist of National Union's present argument is that the pleadings test and the one claim-all claims principle apply only to the duty to defend cases, and this case is not one involving the duty to defend but, rather, the duty to advance defense costs. Although we agree with National Union that this is not a duty to defend case, we disagree that the two principles explained above do not apply.
 {¶ 10} We agree with National Union that the current action does not involve a duty to defend. Clause 1 and Clause 8 of the policy both specifically state that National Union does not assume any duty to defend. Clause 8, however, then provides:
Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing * * *. This right shall terminate if not exercised within 30 days of the date the Claim is first made against an Insured * * *. Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent.
There is nothing in the record to indicate that appellees ever tendered the defense to National Union in writing within 30 days of the claim being made. In fact, in several correspondences and pleadings, appellees specifically requested the advancement of legal costs, and they retained their own counsel to represent them in the matter. Thus, pursuant to Clause 8, we agree with National Union that it had no "duty to defend."
 {¶ 11} Even though National Union had no duty to defend, Clause 8 may still impose upon it a duty to advance defense costs:
When the Insurer has not assumed the defense of a Claim pursuant to this Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company * * * in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.
Clause 8 further provides under what circumstances National Union may withhold advancement of defense costs:
The Insureds shall not * * * incur any Defense Costs without the prior written consent of the Insurer. Only those * * * Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided * * * that in all events the Insurer may withhold consent to any * * * Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy.
 {¶ 12} Given the duty to advance defense costs imposed by Clause 8, we must determine for which claims and which parties National Union must advance defense costs. In doing so, we must determine whether the pleadings test and one claim-all claims principle apply to this case. As indicated above, National Union asserts that the pleadings test and one claim-all claims principle apply only to cases involving the duty to defend and not cases involving the duty to advance defense costs. If the pleadings test and one claim-all claims principle do not apply to the present case, National Union contends, its obligation to advance defense costs turns solely on the language of Clause 8, which indicates it has no duty to advance defense costs to appellees for costs related to any loss that was not covered under the terms of the policy. In such case, National Union maintains that the proper test is whether the claims in ACS's complaint are covered under the terms of the policy or whether the claims fall within any of the exclusions in the policy. Accordingly, we must decide whether the pleadings test and one claim-all claims principle apply equally to cases involving the duty to defend and those involving the duty to advance defense costs.
 {¶ 13} This court, as well as many other Ohio appellate and federal courts, have followed both the pleadings test and the one claim-all claims principle in duty to defend cases. See Erie Ins. Exchange v.Colony Dev. Corp. (1999), 136 Ohio App.3d 406, 413; see, also,Chemstress Consultant Co., Inc. v. Cincinnati Ins. Co. (1998),128 Ohio App.3d 396, 400; Four-O Corp. v. Cincinnati Ins. Co. (Feb. 13, 1991), Hamilton App. No. C-890831; Illinois Union Ins. Co. v.Shefchuk (C.A.6, 2004), 108 Fed.Appx. 294, 300; Holloway Sportswear,Inc. v. Transportation Ins. Co. (S.D.Ohio 2001), 177 F.Supp.2d 764,769. However, we have found no Ohio case law that discusses the pleadings test and the one claim-all claims principle in the context of a duty to advance a defense costs case. Although there are some cases from other jurisdictions that shed some light on this issue, we can find no case law that directly and fully addresses the question before us.
 {¶ 14} National Union argues that the pleadings test and one claim-all claims principle arose from and are grounded in those policies in which insurers assumed the specific duty to defend claims even if groundless, false, or fraudulent, and, because its duty to advance costs in the present case does not indicate a duty to advance costs for claims even if groundless, false, or fraudulent, the pleadings test and one claim-all claims principle do not apply. National Union then points out that every case appellees rely upon to apply the pleadings test and one claim-all claims principle involved a policy that included the duty to defend groundless, false, or fraudulent claims. In support of its contention that the pleadings test and one claim-all claims principle only apply to duty to defend cases involving policies that contain "groundless, false, or fraudulent" language, National Union relies upon Preferred Risk Ins.Co. v. Gill (1987), 30 Ohio St.3d 108, 113-114, which held, in pertinent part:
To compel the insurer to defend regardless of the true facts, where, as here, the insurer has not promised to defend groundless, false or fraudulent claims, imposes an onerous burden for which the insurer did not bargain. * * *
* * *
We hold, therefore, where the insurer does not agree to defend groundless, false or fraudulent claims, an insurer's duty to defend does not depend solely on the allegations of the underlying tort complaint. * * *
 {¶ 15} However, in Cincinnati Ins. Co. v. Colelli Assoc., Inc.
(June 6, 2001), Wayne App. No. 00CA0053 ("Colelli I"), the appellate court relied upon Preferred Risk to find that the pleadings test inWilloughby Hills applied only to duty to defend cases in which the policies included the "groundless, false, or fraudulent" language. The court in Colelli I found that, pursuant to Preferred Risk, the test as to whether there is a duty to defend in cases involving policies that do not include the "groundless, false, or fraudulent" language but, instead, include language that limits the duty to defend to actions with claims covered by the policy, was whether the true facts demonstrate that there is coverage, and not whether the allegations state a claim that is potentially or arguably within the policy coverage, pursuant to the pleadings test in Willoughby Hills. However, in a two-sentence decision, the Ohio Supreme Court reversed the judgment of the court of appeals, holding that Willoughby Hills applied to the policy at issue, andPreferred Risk was limited to its facts. See Cincinnati Ins. Co. v.Colelli Assoc., Inc., 95 Ohio St.3d 325, 2002-Ohio-2214 ("Colelli II"). Thus, it is apparent from Colelli I and II that, even when a policy does not include the "groundless, false, or fraudulent" language, the pleadings test in Willoughby Hills still applies.
 {¶ 16} In the present case, National Union is, in essence, attempting to create the same exception to the pleadings test using the holding inPreferred Risk that the Ohio Supreme Court specifically found improper. Just as the court of appeals analyzed the case in Colelli I, National Union in the matter sub judice is relying upon Preferred Risk to find that there is a distinction between cases with policies that include the "groundless, false, or fraudulent" language and cases that do not. Further, similar to that which the court did in Colelli I, National Union seeks to use this distinction to avoid the pleadings test in order to follow a provision in the policy that indicates a duty arises only when there is coverage under the policy. Although Colelli I and II did not involve the duty to advance defense costs, we find no reason why the Ohio Supreme Court's finding that Preferred Risk is limited to its facts and may not be used to circumvent the pleadings test in Willoughby Hills
should not also be applicable to cases involving the duty to advance defense costs.
 {¶ 17} For the same reasons that we have concluded that the absence of the "groundless, false, or fraudulent" language does not render the pleadings test inapplicable to a case involving the duty to advance defense costs, we find it does not render the one claim-all claims principle inapplicable to a case involving the duty to advance defense costs. Further, in the seminal case establishing the one claim-all claims principle, Preferred Mutual, there is no indication that the court considered any "groundless, false, or fraudulent" language in formulating the principle, and there is not even an indication that the policy in that case included such language. Further, other courts have applied the one claim-all claims principle to cases involving policies that apparently did not include any "groundless, false, or fraudulent" language. See, e.g., Cremeans v. Nationwide Mut. Fire Ins. Co. (Nov. 27, 2000), Monroe App. No. 841. Thus, contrary to National Union's contention, it does not appear that application of the one claim-all claims principle is based upon or dependent upon the existence of the "groundless, false, or fraudulent" language.
 {¶ 18} Although we can find no Ohio case law that explicitly discusses the difference, if any, between a duty to defend and a duty to advance costs with regard to the application of the pleadings test or one claim-all claims test, our research reveals several cases from other jurisdictions that are helpful. Examining these cases from other jurisdictions, we find some support for applying the pleadings test equally to cases involving the duty to defend and the duty to advance costs. Before the court in In re WorldCom, Inc. Securities Litigation
(S.D.N.Y. 2005), 354 F.Supp.2d 455, was a National Union policy that included a Clause 8 with nearly identical language as the Clause 8 in the present case. In addressing the insurer's duty to advance legal costs, the court recited New York law that substantively mirrors the pleadings test language used in Ohio, finding that "[t]he duty to pay defense costs `exists whenever a complaint against the insured alleges claims that may be covered under the insurer's policy.' In sum, the duty to pay defense costs is `construed liberally and any doubts about coverage are resolved in the insured's favor.'" (Citations omitted.) Id. at 464. Similarly, in Ohio, the pleadings test provides that the duty to defend exists when the allegations state a claim that is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded. See Willoughby Hills, at 180. Further, throughout its decision, the court in In re WorldCom made clear that, under New York law, there is no distinction between the duty to defend and the duty to advance legal costs, and that the same general legal principles apply to both equally. See id.
 {¶ 19} In Brown v. American Intern. Group, Inc. (D.Mass. 2004),339 F.Supp.2d 336, at issue was a National Union policy with virtually identical Clause 8 language as in the present case. The court in Brown
was faced with the task of reconciling and interpreting the meaning of the duty to advance costs language and the consent to defense costs language in Clause 8, as quoted previously above. Interestingly, in that case, National Union urged the court to interpret Clause 8 to mean that it would assume the duty to advance defense costs "if the claim suggests a `reasonable potential for coverage.'" Id. at 346. The court agreed and applied National Union's construction, finding this reading accommodated and gave effect to both the duty and the consent provisions of Clause 8. Id. The construction urged by National Union in Brown is essentially the pleadings test from Willoughby Hills. Under the pleadings test, the duty to defend exists when the allegations state a claim that is potentially or arguably within the policy coverage; under National Union's construction in Brown, the duty to advance costs exists when "the claim suggests a `reasonable potential for coverage.'" Id. These are substantively the same and would support the applicability of the pleadings test to cases involving the duty to advance legal costs.
 {¶ 20} Also at issue in National Union Fire Ins. Co. of Pittsburgh v.Willis (S.D.Tex. 2001), 139 F.Supp.2d 827, was a National Union policy with virtually identical Clause 8 language as that in the present case. Similar to Brown, National Union argued in Willis that, in order for its duty to advance defense costs to arise, the claims must be "arguably" covered by the policy. The court agreed and found that, in order for the duty to advance costs to arise, "`the pleadings must allege a claim that is "potentially" covered by the applicable policy.'" Id. at 833, quotingGulf States Ins. Co. v. Alamo Carriage Serv. (C.A.5, 1994), 22 F.3d 88,90. Both National Union's and the Willis court's constructions are essentially the pleadings test. It is obvious that the court in Willis
saw no distinction between policies including the duty to defend and the duty to advance costs with regard to application of the pleadings test, as it recited duty to defend case law when it was clearly a duty to advance defense costs case.
 {¶ 21} In addition, in Hurley v. Columbia Cas. Co. (D.Del. 1997),976 F.Supp. 268, the federal court, interpreting Michigan law, discussed the duty to defend versus the duty to advance costs. The directors and officers policy at issue in that suit contained a duty to advance legal costs provision and did not contain traditional "duty to defend" language. Under the terms of the policy at issue in that case, like in the present case, the policy specifically disclaimed the insurer had a duty to defend, and the insured directed the litigation and its legal counsel. Id. at 275. The court stated that it was unable to find any decision of a Michigan court that opined on the duty assumed in a directors and officers policy where the insurer commits to advance defense costs but does not explicitly assume the duty to defend. Id. However, the court in Hurley concluded that "there does not exist a significant difference between the duty to defend and the promise to advance defense costs, other than the difference between who will direct the defense." Id. The court also found that the duty to advance defense costs must be similarly interpreted as the duty to defend so as to require the insurer to provide a defense even for claims that ultimately are held meritless, as it would be an anomaly to require the insurer to advance defense costs only for meritorious claims. Id. The court went on to note, however, that, while the duties to defend and advance legal costs may arise if the allegations in the underlying complaint arguably come within the policy coverage, neither the duty to defend nor the undertaking to advance defense costs compels the insurer to pay defense costs on a claim for which there is no possibility of coverage by the policy. Id. Thus, it is apparent that, in Hurley, the court found no difference between the duty to defend and the duty to advance costs and found both require the insurer to advance defense costs for arguable claims that may be ultimately found to be meritless.
 {¶ 22} After a review of the preceding cases, both from Ohio and other jurisdictions, we conclude that, when a policy imposes a duty to advance defense costs but no duty to defend, the pleadings test and the one claim-all claims principle apply to determine the duty of the insurer to advance defense costs. We see no reason to make a distinction between duty to defend cases and duty to advance defense costs cases with respect to the application of the one claim-all claims principle and pleadings test. There is no Ohio law prohibiting like application of these legal principles to both kinds of cases, and there exists case law from other jurisdictions that appears to support a consistent application. Having concluded such, we must now apply both to the facts in the present case and determine whether the allegations in the underlying complaint state at least one claim against each party that is potentially or arguably within the policy coverage, so that National Union has the duty to advance legal costs for the defense of all of the claims of that party, regardless of the ultimate outcome of the action or National Union's ultimate liability.
 {¶ 23} The trial court found that no exclusion in the policy applied to ACS's claim for conversion, and, thus, National Union had a duty to defend appellees as to all claims. As the trial court based its determination of the duty to advance defense costs on the conversion claim, we will also begin our analysis with this claim. We first note that ACS brought the conversion claim against only Blower, Johnson, and Myatt, and not Leadscope. In finding National Union had a duty to advance costs to all appellees for all claims, the trial court apparently did not consider that the conversion claim was not brought against Leadscope. Therefore, we will address National Union's duty to advance costs with regard to the conversion claim only as it relates to Blower, Johnson, and Myatt.
 {¶ 24} Conversion has been defined as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93, 96. Thus, the elements required for conversion are: (1) a defendant's exercise of dominion or control; (2) over a plaintiff's property; and (3) in a manner inconsistent with the plaintiff's rights of ownership. CozmykEnt., Inc. v. Hoy (June 30, 1997), Franklin App. No. 96APE10-1380.
 {¶ 25} National Union first points to two specific exclusions in the policy that it claims preclude coverage for the conversion claim. National Union first claims that Clause 4(h) precludes coverage for the conversion claim. Clause 4(h) of the policy provides:
The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:
* * *
(h) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement[.]
 {¶ 26} The parties' disagreement as to the applicability of this section largely concerns their differing interpretations of "contractual liability," for which there is no specific definition in the policy. National Union contends that any alleged breach of the employment agreements executed between ACS and Blower, Johnson, and Myatt results in "contractual liability." Appellees counter that, in order for there to be the type of "contractual liability" contemplated by Clause 4(h), there must be a contract at issue that imposes contractual liability upon a party for his or her failure to perform under a business contract initiated to provide services or products, which the employment agreements in the present case do not. We further note that, although appellees also attempt to glean the meaning of "contractual liability" by applying the definition of "No Liability" found in Clause 2(m), which requires a final judgment, we reject this contention outright, given Clause 4(h) indicates that the contractual liability may be merely "alleged."
 {¶ 27} We agree with National Union that the "contractual liability" language as used in Clause 4(h) must be read to encompass a breach of the employment agreements executed by Blower, Johnson, and Myatt. A court must give undefined words used in an insurance contract their plain and ordinary meaning. Miller v. Marrocco (1986), 28 Ohio St.3d 438, 439. Assigning the pertinent terms "contractual" and "liability" their plain and ordinary meanings, as defined by Black's Law Dictionary and standard dictionaries, makes clear that an employee's violation of an employment agreement must necessarily result in "contractual liability." As for the term "contractual," employment agreements are, of course, contracts. Black's Law Dictionary defines an "employment contract" as "[a]n agreement or contract between employer and employee in which the terms and conditions of one's employment are provided." Black's Law Dictionary (6 Ed. 1990) 525. Webster's Ninth New Collegiate Dictionary (1987) 284, defines "contractual" as "of, relating to, or constituting a contract[.]" As for "liability," Black's Law Dictionary notes that the term "liability" is broad and offers numerous definitions, including "an obligation one is bound in law or justice to perform," "condition of being actually or potentially subject to an obligation," "every kind of legal obligation, responsibility, or duty," and "the state of one who is bound in law and justice to do something which may be enforced by action." Black's Law Dictionary, at 914.
 {¶ 28} Utilizing the plain and ordinary meanings of the individual terms "contractual" and "liability" and applying them to the facts of the present case, "contractual liability" must mean the condition of being actually or potentially subject to obligations, responsibilities, or duties imposed by the employment agreements. Clearly, Blower, Johnson, and Myatt were actually or potentially subject to obligations, responsibilities, and duties imposed by their employment agreements. Therefore, for the purposes of Clause 4(h), we find that an allegation that Blower, Johnson, and Myatt violated their employment agreements necessarily is an allegation of "contractual liability" on their part.
 {¶ 29} Turning to the other terms in the pertinent phrase in Clause 4(h), we also find they have plain and ordinary meanings. As for the phrase, "alleging, arising out of, based upon or attributable to" in Clause 4(h), "allege," is defined by Black's Law Dictionary to mean "[t]o state, recite, claim, assert, or charge[.]" Black's Law Dictionary, at 74. The term "arising out of" in a liability insurance policy has been found to afford very broad coverage and has been defined to mean "originating from," "growing out of," "flowing from," or "having its origin in." Stickovich v. Cleveland (2001), 143 Ohio App.3d 13, 37, citing Nationwide Mut. Fire Ins. Co. v. Turner (1986), 29 Ohio App.3d 73,77, and Nationwide Ins. Co. v. Auto-Owners Mut. Ins. Co. (1987),37 Ohio App.3d 199, 202. To "base upon" means "to find a base or basis for." Webster's Dictionary, at 133. "Attribute" means "to reckon as made or originated in an indicated fashion." Id. at 115.
 {¶ 30} Accordingly, in order for the exclusion in Clause 4(h) to apply to the current circumstances, the claim for conversion made against Blower, Johnson, and Myatt must have originated from, grown out of, or flowed from the actual or alleged obligations, responsibilities, and duties imposed upon Blower, Johnson, and Myatt by their employment agreements. However, after a review of ACS's complaint, we find that ACS's claim for conversion did not necessarily originate from, grow out of, or flow from the alleged duties imposed by the employment agreements. ACS's conversion claim could have arisen from tortious activity as well as the employment contracts. In other words, appellees could have converted proprietary information or processes owned by ACS without the existence of the contract. Importantly, ACS's complaint does not limit the allegations of conversion to those arising from the employment agreements. Though the claim does "allege" that appellees' failure to assign the patent rights to ACS violated their obligations under the employment agreements, such an act is not an element of the tort of conversion. It is clear ACS could maintain an action for conversion and seek to establish all of the elements for it without regard to the employment agreements. We also find ACS's mere reference to contractual liability in the conversion claim and in other parts of the complaint, without actually basing the conversion claim upon the contractual liability, is insufficient to trigger the exclusion. If this were true, pleading an alternative theory in a separate claim that included an allegation of contractual liability would exclude the other claims in the complaint even if they clearly were not based upon contractual liability. Such a severe consequence cannot be upheld without specific language indicating this is what the parties intended. For these reasons, ACS's claim for conversion neither necessarily arises from nor is based upon contractual liability, and Clause 4(h) does not apply to preclude coverage for Blower, Johnson, and Myatt for purposes of determining National Union's duty to advance defense costs.
 {¶ 31} National Union next claims that Clause 4(a) precludes coverage for the conversion claim. Clause 4(a) of the policy provides that the insurer is not liable to make any payment for loss in connection with a claim made against an insured:
(a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an insured was not legally entitled[.]
National Union asserts that the allegations in the claim for conversion allege that Blower, Johnson, and Myatt gained a profit and an advantage as a result of the conversion to which they were not legally entitled. Appellees counter that the terms "in fact" means that there must be a final adjudication that there was a profit or advantage gained from a conversion.
 {¶ 32} We agree with appellees that the language "in fact" requires a final determination that an act of conversion has taken place resulting in the gaining of a profit or an advantage. Our research reveals no Ohio case law on point, but several other jurisdictions have addressed the issue. Some courts have held that the "in fact" language does not require a final adjudication. See, e.g., Brown LaCounte, L.L.P. v. WestportIns. Corp. (C.A.7, 2002), 307 F.3d 660. However, we find the reasoning inSt. Paul Mercury Ins. Co. v. Foster (C.D.Ill. 2003), 268 F.Supp.2d 1035, more persuasive. The court in St. Paul Mercury addressed an exclusion with nearly the exact same language as Clause 4(a) and found that the "in fact" language required a final adjudication. The court rejected the insurer's contention that a final adjudication of wrongdoing was not required and mere allegations that an insured gained a personal profit to which he was not legally entitled would be enough to void coverage. The court found that not to require a final adjudication rendered the "in fact" language superfluous and was contrary to the principles of construction directing courts to give meaning to all policy provisions and avoid interpretations that render any part of the contract superfluous. Id. at 1045. The court reasoned that, as the insureds in the underlying case could have received personal profits and be legally entitled to retain them so long as they complied with certain requirements, and that issue remained to be determined at trial in the underlying litigation, it was clear that any determination as to whether any insured gained personal profit in fact had to await resolution of the underlying litigation. Id.
 {¶ 33} The court in St. Paul Mercury distinguished the facts before it from the situation in Brown LaCounte, where the allegations involved an attorney having billed and received payment for legal services provided without a federally approved attorney contract. Id. at 1046. The court found that the allegations in the present case, instead, involved the illegality of the actions taken or profits received, and such a finding was inextricably intertwined with a genuine issue of material fact requiring resolution at trial in the underlying case. Id.
 {¶ 34} Like the circumstances in St. Paul Mercury, in the present case, there remains a question of whether any conversion, in fact, took place. Only if a conversion actually took place would the profits derived from appellees' patent be deemed illegal. We agree that "in fact" must have some meaning, or National Union would not have included it in this provision. In interpreting a contract, the court must give meaning to every word used in each provision of such contract and cannot overlook the fact that certain words exist. Cleveland Elec. Illum. Co. v.Cleveland (1988), 37 Ohio St.3d 50. Thus, we must read the "in fact" language in the present policy as intending to accomplish some purpose, and we cannot omit the terms as being mere surplusage. See Affiliated FMIns. Co. v. Owens-Corning Fiberglas Corp. (C.A.6, 1994), 16 F.3d 684, 686
("In construing a contract, a court * * * must give meaning to every paragraph, clause, phrase and word, omitting nothing as meaningless, or surplusage."). Further, that the policy in the present case did not include the "in fact" language in other provisions that required only alleged activity is persuasive that "in fact" requires a final determination. Therefore, we find that the "in fact" language in Clause 4(a) requires a final adjudication before its applicability may be determined. See, also, In re Ambassador Group, Inc. Litigation (E.D.N.Y. Feb. 27, 1991), No. MDL-778(RJD), fn. 10 (addressing a nearly identical exclusion in a National Union policy and noting that the application of this exclusion could not be determined fairly until the conclusion of the underlying litigation). For these reasons, National Union cannot claim that coverage does not arguably or potentially exist under Clause 4(a) with respect to Blower, Johnson, and Myatt.
 {¶ 35} National Union also alleges that several general provisions, as well as several related specific exclusions, apply to preclude coverage. However, we find none of its arguments with regard to such persuasive. National Union first argues that Coverage A and B in Clause 1 limits its coverage to losses arising from any actual or alleged "wrongful act," which is defined by Clause 2(t)(1) to mean certain acts committed by officers, directors, or employees in their respective capacities, or any matters claimed against an insured solely by reason of their status as directors, officers, or employees. In the present case, conversion requires the wrongful exercise of dominion over property to the exclusion of the rights of the owner, which must have necessarily taken place while Blower, Johnson, and Myatt were employed by Leadscope. Thus, this clause does not preclude coverage under the conversion claim. National Union also uses the same argument to invoke Clause 4(f), which excludes coverage for any act or omission of an insured while serving in any capacity other than a director, officer, or employee of the company. However, for the same reason as cited above, we find Clause 4(f) does not preclude coverage for purposes of National Union's duty to advance defense costs.
 {¶ 36} National Union also argues that, because Coverages A and B in Clause 1 provide coverage for only a "loss" which is defined by Clause 2(k) as "damages" and appellees are seeking equitable relief under their conversion claim, there is no coverage for the conversion claim. However, because the claim for conversion also requested compensatory damages, we find this section is ineffective to prevent coverage for purposes of National Union's duty to advance defense costs. Based upon the same argument, National Union also claims that coverage is precluded under the exclusion in Clause 4(q)(4), which excludes coverage for a claim made against an insured seeking non-monetary relief. However, because this section applies only to Leadscope by its terms and not to Blower, Johnson, and Myatt, it is insufficient to preclude coverage for the conversion claim.
 {¶ 37} Relatedly, National Union claims that, because the definition of "loss" under Clause 2(k)(6) does not include matters that may be deemed uninsurable under the law and appellees request punitive and exemplary damages which are deemed uninsurable under R.C. 3937.182, there is no coverage for the conversion claim. However, because ACS's claims for conversion also requested compensatory damages, in addition to punitive damages, we find this section is ineffective to preclude coverage for the conversion claim for purposes of National Union's duty to advance defense costs.
 {¶ 38} Accordingly, because none of the specific exclusions or general policy provisions precludes coverage for the conversion claim, we find that the allegations in ACS's complaint state a claim that is potentially or arguably within the policy coverage. Further, pursuant to our determination that the pleadings test and the one claim-all claims principle apply to cases involving the duty to advance defense costs, we also find that, because the allegations in the underlying complaint state at least one claim that is potentially or arguably within the policy coverage for Blower, Johnson, and Myatt, National Union has the duty to advance legal costs for the defense of all of the claims against Blower, Johnson, and Myatt, regardless of the ultimate outcome of the action or National Union's ultimate liability to them.
 {¶ 39} Although from a practical standpoint the advancement of defense costs to defend Blower, Johnson, and Myatt would likely inure to the benefit of defending Leadscope against the same claims under most circumstances, we will also determine whether National Union has the separate duty to advance costs for the claims against Leadscope. ACS alleged only three claims that included allegations against Leadscope: misappropriation of trade secrets, common-law unfair competition, and implied license under the shop-right doctrine. Thus, in order to find that National Union has a duty to advance defense costs for all of the claims against Leadscope, we must find that at least one of these three claims is potentially or arguably within the policy coverage for Leadscope.
 {¶ 40} With regard to the misappropriation of trade secrets claim, we find that such claim is not potentially or arguably within the policy coverage for Leadscope. Appellees essentially concede that Clause 4(q)(1) excludes coverage for Leadscope with regard to this claim, and we agree. Clause 4(q)(1) excludes coverage, as it relates to the insured company only, for any alleged misappropriation of any trade secret or any other intellectual property rights. Therefore, there is no arguable or potential coverage for this claim under the policy as it relates to Leadscope.
 {¶ 41} With regard to the common-law unfair competition claim against Leadscope, appellees also essentially concede that Clause 4(q)(2) excludes coverage for Leadscope, and we agree. Clause 4(q)(2) excludes coverage, as it relates to the insured company only, for any alleged statutory, regulatory, or common-law violation with respect to business competition and unfair trade practices. Therefore, there is no arguable or potential coverage for this claim under the policy as it relates to Leadscope.
 {¶ 42} With regard to ACS's claim against Leadscope for an implied license under the shop-right doctrine, a "shop right" is a right that, under certain circumstances, the law recognizes in an employer to practice and use, without compensation, an invention developed by an employee. Deye v. Quality Engraving Electrotype Co. (1950), 100 N.E.2d 310, 317, reversed on other grounds, 90 Ohio App. 324. It is, in effect, a nonexclusive license to use, manufacture and sell the invention without financial obligation to the inventor. Id. A "shop right" arises where an employee conceives and perfects an invention during his hours of employment and working with his employer's materials and appliances and at his employer's expense. Id. National Union again argues that Coverages A and B in Clause 1, which require a "loss," and the definition of "loss" under Clause 2(k), which is defined as "damages," preclude coverage for this claim against Leadscope. We agree. Unlike the claim for conversion against Blower, Johnson, and Myatt, to which National Union attempted to apply these same sections, ACS's claim for an implied license under the shop-right doctrine against Leadscope contains no concurrent request for damages. ACS's claim requests only an equitable right to use the technology in appellees' patent. In addition, we agree with National Union that Clause 4(q)(4), explained above, also precludes coverage for Leadscope for the claim of implied license under the shop-right doctrine. Clause 4(q)(4) precludes coverage for claims made against the company seeking non-monetary relief. Because the claim for implied license under the shop-right doctrine includes no request for any type of relief other than an equitable right to use the technology in appellees' patent, we find Clause 4(q)(4) excludes coverage for such claim. Therefore, we find that there is no arguable or potential coverage for Leadscope on the claim for implied license under the shop-right doctrine.
 {¶ 43} For these reasons, we find that there is no arguable or potential coverage for any of the claims against Leadscope, and, thus, National Union has no duty to advance defense costs to Leadscope with regard to the underlying action brought by ACS. Further, because the conversion claim is potentially or arguably within the policy coverage for Blower, Johnson, and Myatt, National Union has the duty to advance legal costs for the defense of all of the claims against them, regardless of the ultimate outcome of the action or National Union's ultimate liability to them. Therefore, National Union's assignment of error is sustained in part and overruled in part.
 {¶ 44} Accordingly, National Union's assignment of error is sustained in part and overruled in part, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for proceedings in accordance with law, consistent with the above opinion.
Judgment affirmed in part and reversed in part; case remanded.
Bryant and Petree, JJ., concur.