Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered January 11, 2013, which granted defendant’s motion to dismiss the complaint, unanimously affirmed, with costs.
The motion court correctly found that the underlying claims against plaintiffs brought by investors following the revelation of the Ponzi scheme of Bernard L. Madoff are subject to certain exclusions from coverage under the “Bankers Professional Liability Insuring Agreements” issued to plaintiffs by defendant.
The loss of money exclusion bars coverage for claims for “the actual loss of money, securities, property or other items of value in the custody or control of [the bank].” Contrary to plaintiffs’ contention, the investors’ allegation that the money in their accounts with Bernard L. Madoff Investment Securities (BLMIS) was stolen, unlawfully retained, or misappropriated is a claim for an actual loss of money (see Bleznak Black v Allied World Natl. Assur. Co., 2012 WL 1365973, *2-3, 2012 NJ Super Unpub LEXIS 879, *4-9 [Apr. 20, 2012, No. A-6107-09T2]). Moreover, “[a]n insurance policy is not illusory if it provides coverage for some acts; £it is not illusory simply because of a potentially wide exclusion’ ” (ACE Capital Ltd. v Morgan Waldon Ins. Mgt., LLC, 832 F Supp 2d 554, 572 [WD Pa 2011]). The subject policies provide a broad range of coverage for liability that may arise in connection with plaintiffs’ provision of ordinary banking services.
The personal profit and advantage exclusion bars coverage for loss “based upon, arising out of, or attributable to [the] Insured gaining in fact any personal profit, remuneration or financial advantage to which such Insured was not legally entitled.” The investors’ allegation that plaintiff Westport National Bank used incoming funds to pay its own fees and to sustain its custodial business and continue to generate its fees implicates a “profit” and a financial “advantage to which [Westport] was not legally entitled” (see Plainview Milk Prods. Coop. v Westport Ins. Corp., 182 F Supp 2d 852, 855 [D Minn 2001]). Nor is the exclusion inapplicable because the insured is a corporate £‘person” (id.).
The sale of securities exclusion bars coverage for any claim *609 “based upon, arising out of, or attributable to: (a) the [bank’s] underwriting, syndication, or promotion of equity or debt securities; (b) the [bank’s] investment banking activities, including the sale and distribution of a new offering of securities; [or] . . . (e) any disclosure requirements in connection [therewith].” The underlying regulatory action against plaintiffs alleges that, by depositing the investors’ funds in omnibus accounts and allocating shares in those accounts to the investors, plaintiffs engaged in the sale or promotion of unregistered securities and failed to provide the required disclosures. Thus, the exclusion bars coverage of the claims asserted in the regulatory action.
The insolvency exclusion bars coverage for loss “based upon, arising out of, or attributable to the insolvency . . . of . . . any . . . investment company, investment bank, or any broker or dealer in securities or commodities.” Insolvency exclusions have been held to apply despite the fact that the underlying claims are made against parties that are “independent of the insolvent entity” (Coregis Ins. Co. v American Health Found., Inc., 241 F3d 123, 130-131 [2d Cir 2001]). Further, the courts of Connecticut (whose law applies to this action) have interpreted broadly the term “arising out of” in insurance policies (see Board of Educ. of the City of Bridgeport v St. Paul Fire & Mar. Ins. Co., 261 Conn 37, 46-48, 801 A2d 752, 758 [2002]). The investors’ claims certainly are “connected with,” “had [their] origins in,” “grew out of,” “flowed from” or “[were] incident to” Madoffs Ponzi scheme and the insolvency of BLMIS (see id. [internal quotation marks omitted]). Thus, the insolvency exclusion bars coverage for those claims.
Concur—Sweeny, J.P., Renwick, Andrias, Saxe and Kapnick, JJ.